The State v. Hull.

THE STATE v. HULL.

1. Criminal law: TESTIMONY OF ACCOMPLICE: CORROBORATION. An accomplice cannot be corroborated in his testimony against the defendant, by the failure of the latter to introduce the testimony of witnesses present at the trial, who, if the testimony of the accomplice had been false, might have contradicted him.

2. —— The accused, in such case, has the right to stand upon the law (Rev. § 4102) requiring the testimony of the accomplice to be corroborated by "other evidence;" and no basis for a presumption in favor of the accomplice's testimony, can arise from the failure of the defendant to controvert it. Lynch law proceedings severely condemned by DILLON, Ch. J.

3. —— EVIDENCE. The minutes of testimony taken by the justice upon the preliminary examination, as prescribed in section 4593 of the Revision, are not conclusive when introduced by the defendant on his trial in the District Court, as to what the witnesses testified to upon such examination.

*Appeal from Wapello District Court.*

WEDNESDAY, DECEMBER 23.

TESTIMONY OF ACCOMPLICE: CORROBARATION, ETC. — The defendant, John Hull, was indicted with his brother, Hiram, under section 4246 of the Revision, for buying and receiving from one Buck Ellis, a horse, the property of one Abram Brookhart, knowing the same to be stolen, etc.

Plea; not guilty. John Hull was tried separately, found guilty, and brings this appeal.

The other necessary facts are stated in the opinion.

*H. H. Trimble* for the appellant.

*Henry O'Connor*, Attorney-General, and *T. B. Perry* for the State.

DILLON, Ch. J. — The defendant assigns for error the giving by the court of certain instructions, and particu-CRIMINAL LAW: larly of instruction number twenty-one, in testimony of accomplice: relation to the corroboration of the testimony corroboration. of the accomplice, Smith. That Smith was an accomplice is avowed by him in his testimony and not denied by the counsel for the State. He was the main witness for the prosecution. That the full meaning and purpose of the instruction above named may be seen, it is necessary to state certain other facts appearing in the record. The accomplice, Smith, had been arrested, as well as other persons, for having been engaged in the stealing of horses.

These arrests were made by or under the auspices of a vigilance committee, stated to be composed of several hundred members.

Among those thus arrested was one Thompson. He was taken by the vigilance committee, and without any

judicial trial, deprived of his life by being hung in the presence of a large number of the members of the committee, executing what they style lynch law. Such a proceeding, it is the duty of courts to say, notwithstanding the respectable general character of many of the men taking part in it, merits the severest condemnation. No greater misuse of the word "*law*" is possible than to apply it to a procedure not only destitute of law but in bold defiance of it.

And in this State where the laws are respected, and where there is no difficulty in convicting criminals whose offenses can be proved (and none others should ever be convicted), these self-organized and lawless tribunals, acting with hot haste and blindly, guided by suspicion and hearsay, and not by evidence given under the solemnities and sanctions of an oath, the accused without friends, or counsel, or power, or opportunity to explain away the circumstances alleged against him or to establish his innocence, in this State, we say, such proceedings have not the poor palliation of even an apparent necessity. Those who, with rope or revolver in hand, extort confessions by threats of illegal punishment if their victim refuses to acknowledge his own guilt or satisfactorily to implicate others, forget the well established fact, that experience has shown that confessions or accusations thus obtained are unworthy of credit.

Let the citizens organize, if need be, to protect their property, and to ferret out offenders, but let their guilt be ascertained and their punishment be inflicted by the law of the land, and by that alone.

The circumstances disclosed in this record connected with this case seemed to require these observations from the court.

Smith, the accomplice, who testified against the appellant was present, under arrest, when Thompson was hung.

The State v. Hull.

He was threatened with and feared the same fate. It was stated to him, however, that if he would confess his own guilt and reveal all he knew, he would be spared. This he agreed to do. He admitted his own guilt, and implicated certain others, but denied, at this time, that the Hulls were guilty. He was taken to jail and remained there for some time. Through threats or promises, or both, the vigilance committee get further confessions from him, bail is procured for him, he is set at liberty, and was the main witness for the State on the trial.

His testimony, on the trial, implicated Ellis, the Hulls, himself and others. He stated, respecting the horse in question, that it was stolen by Ellis, brought to Hull's house, that both John and Hiram Hull were present, knew the horse was stolen, etc. As before remarked, John Hull was alone upon trial. A bill of exceptions taken by the appellant, states "that while the cause was being submitted to the jury, the co-defendant, Hiram Hull, was about the court room, and was not introduced as a witness by the defendant; that counsel for the State, in addressing the jury, severely censured the conduct of the defendant, in not introducing Hiram Hull as a witness, claiming that the failure to do so tended to corroborate the evidence of Smith as to all facts in respect to which he might have been contradicted by Hiram Hull."

Under these circumstances the court gave to the jury this instruction :

"21. If you believe that the defendant, during the trial, knew that there were persons present who would contradict the witness Smith in a number of material statements in his testimony, if these were untrue, and defendant failed to call such witnesses for such purpose, such fact may be considered by you as tending to corroborate the witness, Smith."

Concerning the requisite corroboration of the testimony

of an accomplice, the statute provides (Rev. § 4102) that " a conviction cannot be had upon the testimony of an accomplice, unless he be *corroborated by such other evidence* as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense, or the circumstances thereof." Under this statute, the instruction was plainly wrong. The statute requires " other evidence " to corroborate the accomplice. The principle of the instruction nullifies this requirement. Suppose Smith had been the only witness for the State. Could he be corroborated by the failure of the defendant to introduce testimony of witnesses present at the trial, who, if the accomplice had stated untruths, could contradict him? Clearly not. Yet such is the doctrine of the instruction.

In the case supposed, the defendant would have the right to rely upon the fact, and the law arising therefrom, that the accomplice was uncorroborated, hence his guilt was not established, and hence, also, no basis for a presumption in favor of the accomplice's testimony, arising from a failure to attack it. In the case supposed, there is no evidence except that of the accomplice. The failure to corroborate him, leaves his testimony standing alone, and this the statute declares to be insufficient to justify a conviction.

When it is remembered that the witness mainly referred to in the instruction, was the appellant's own brother, jointly indicted with him, and whose testimony, if introduced, would perhaps have but little weight, the instruction in question becomes particularly objectionable.

Respecting the other errors assigned, it is only necessary to say, that the court did not err in refusing the 3. —— evidence. defendant's motion for a continuance; nor in holding that the minutes of the testimony (not read over

to, or signed by the witnesses) taken at the preliminary examination (Rev. § 4593) by the justice, and used as evidence by the defendant, were not conclusive upon the State as to what the witnesses testified to upon such examination.

This was the only point ruled respecting these minutes, and we need not consider any other. We give no opinion as to the admissibility, when objected to, of such minutes as original, or as impeaching evidence. *State* v. *Ostrander*, 18 Iowa, 435 ; *Boyd* v. *First National Bank*, 25 id. 255.

We simply hold, that being admitted they were not conclusive.

For the error in the instruction above noticed, the judgment of the District Court is reversed and the cause remanded for a trial *de novo*.

Reversed.