## THE STATE v. COLLINS.

1. **Criminal law: SELF-DEFENSE.** While it is necessary in order to justify a homicide on the ground of self-defense, that there should have been actual and urgent danger, it is not necessary that the danger should *in fact* exist, and if it exists to the defendant's comprehension as a reasonable man, it is sufficient.

2. —— **EVIDENCE, MINUTES OF TESTIMONY.** Minutes of testimony of a witness taken down by the magistrate in the preliminary examination before him, are not admissible against the defendant on trial.

3. —— **IMPEACHING TESTIMONY.** Nor are such minutes admissible for the purpose of impeaching the witness, by showing that his statements therein set down are different from those made in his testimony on the trial, unless the proper foundation has first been laid by calling his attention to the matter, time, place and person involved in his former statements.

4. —— **VERDICT.** A general verdict of guilty imports a conviction of the defendant in a criminal prosecution, on every material allegation or charge of the indictment. It is accordingly *held*, that an inquiry by the court of the jury, upon their returning a verdict of guilty, as to whether they found the defendant guilty of the particular offense charged in the indictment, was not erroneous.

5. —— CHANGE OF VENUE. Where an application for a change of venue, on the ground of prejudice of the inhabitants of the county against the defendant, was supported by the affidavit of seven residents of the county, and repelled by the affidavit of twenty others to the effect that they believed no such prejudice existed, it was *held*, that the overruling of the application was not erroneous.

*Appeal from Cerro Gordo District Court.*

FRIDAY, JUNE 23.

THE defendant, William Collins, was indicted at the October term, 1870, of the district court of Cerro Gordo county, for "an assault with intent to commit murder," to which he pleaded "not guilty," was tried at a special term of the court in December, 1870, found guilty, and sentenced to imprisonment in the penitentiary of the State for the term of six years; from which sentence he appeals to this court.

The facts necessary to an understanding of the questions before the court are stated in the opinion.

*Goodykoontz, McKenzie* and *John T. Clark* for the appellant.

*Henry O'Conner*, Attorney-General, for the appellee.

MILLER, J.—I. The evidence shows that the defendant and several others were in a restaurant in Mason city at the time of the alleged crime; that one James R. McMillin, in company with one Babcock, came in while Collins, the defendant, was still there; that at the time McMillin came into the room where the defendant was sitting, McMillin was excessively intoxicated—as the witnesses express it, "as drunk as a man could be and stand up;" that McMillin, staggering toward one Kirk, who was sitting near the defendant, took hold of Kirk and

1. CRIMINAL LAW: self-defense.

pulled him off of a box on which he was sitting; that Kirk told him to "hold on, or he would step on Bill Collins' toes;" that McMillin said he "did not care for Bill Collins or any other man," and, letting go his hold of Kirk, he staggered away from him and put his hand on the defendant's shoulder and turned him partly around, at which time the defendant sprang to his feet, took hold of McMillin with his left hand (some of the witnesses say by the throat), and stabbed him with the large blade of a common sized jack-knife, which he held in his right hand, and with which he had been whittling. The wound made by the knife was a little to the left of the middle line of the body, two and a half inches from the navel, about one-half inch wide, and from two and a half to three inches deep, and entered the stomach.

On the trial the defendant offered to introduce evidence to show that McMillin, the person stabbed, was a large, powerful and muscular man, who, when under the influence of liquor, was quarrelsome, ugly, dangerous and vindictive; that defendant knew these facts; that, in connection with this offer, he also proposed to prove that on the same day, and shortly before the commission of the assault, McMillin had threatened to take defendant's life, of which threat he had been informed only a few minutes previous to the assault.

The court refused to admit this evidence, and this ruling is assigned as error.

A man may repel force by force in the defense of his person, habitation or property against one who manifestly intends and endeavors, by violence or surprise, to commit a known felony on either. In such cases he is not obliged to retreat, but may pursue his adversary until he finds himself out of danger. Wharton's Am. Crim. Law (3d ed.), 456. And it has been held by this court that a person is not required to flee from his adversary, when assailed with a deadly weapon, and retreat to the wall, before he can

justify the killing of his assailant. *The State* v. *Tweedy*, 11 Iowa, 350. But to make a homicide justifiable, on the ground of self-defense, there must be actual and urgent danger. Id. 457; *The State of Iowa* v. *Neeley*, 20 Iowa, 108; *The State* v. *Thompson*, 9 id. 188. It is not necessary, however, that the danger should in fact exist, but that there be actual and real danger *to the defendant's comprehension* as a reasonable man. The inquiry is not whether the harm apprehended was actually intended by the assailant, but was it actual and real *to the accused* as a reasonable man as compared with danger remote or contingent. *The State* v. *Neeley, supra;* 1 Bishop's Cr. Law, 385; Wharton on Homicide, 407.

Without expressing any opinion in respect to the *sufficiency* of the rejected evidence in this case, to justify the alleged assault, or even to mitigate its degree, we are of opinion that it should have been admitted to the jury, under proper instructions from the court upon the law, so that the jury, with all the facts and circumstances connected with the transaction before them, might be enabled to judge of the *intent* and motive of the defendant in the commission of the assault; whether to his comprehension, as a reasonable man, there was such actual and urgent danger as to justify the alleged assault, or whether it was made wantonly and without actual apprehension of danger from McMillin.

II. On the trial the State offered to read in evidence what purported to be the substance of the testimony of George Whitney, taken down by the justice of the peace in the preliminary examination of the case. This was objected to by defendant's counsel on various grounds, one of which was, that such minutes of testimony, taken down in the preliminary examination of the charge, are incompetent as evidence. The court overruled the objections of defendant and admitted the evidence, and this ruling is assigned as error. This ques-

*2.—— evidence: minutes of testimony.*

The State v. Collins.

tion has never before come up in this court for decision. In the case of *The State* v. *Hull*, 26 Iowa, 292, the minutes of testimony taken before the examining magistrate were introduced by defendant *without objection* from the State, and it was held that the court below did not err in ruling that such minutes were not *conclusive* upon the State. DILLON, Ch. J., in delivering the opinion, says: "We give no opinion as to the admissibility, when objected to, of such minutes as original or impeaching evidence. We simply hold that, being admitted, they are not conclusive." We know of no rule of evidence which would make these minutes original evidence against a defendant in a criminal prosecution. The statute makes provision for taking depositions of witnesses in criminal cases in *behalf* of a defendant. Rev., chaps. 223, 224. But no provision is made for the taking of depositions in behalf of the State.

The constitution of the State, which is paramount in authority over an act of the general assembly conflicting with it, provides that "in all criminal prosecutions, and in cases involving the life or liberty of an individual, the accused shall have the right to a speedy public trial by an impartial jury; to be informed of the accusation against him; to have a copy of the same when demanded; *to be confronted with the witnesses against him ;* to have compulsory process for his witnesses; and to have the assistance of counsel." New Const., § 10, art. 1.

Here is a clear and express declaration of the *right* of the defendant "in a criminal prosecution" "to be confronted with the witnesses against him." This right to have them brought into court, where he can see them, while they give evidence against him, is secured by this constitutional provision. Their testimony can be given only upon the trial of the cause, and face to face with the accused; and any act of the legislature purporting to authorize depositions of witnesses, taken out of court, to

be used against a party on trial in a criminal case, would be in conflict with this section of the constitution, and, therefore, void. The minutes of evidence admitted in this case do not rise even to the dignity of a deposition; but, if they did, it would have been error to admit them as original evidence, because incompetent in view of the above clause of the constitution.

III. Were these minutes admissible as impeaching evidence? Whether they could have been rendered competent for this purpose, had the State laid the proper foundation, we need not determine. When it is sought to impeach a witness by proof of statements made by him out of court, contrary to what he has testified to on the trial, his attention must be first drawn to the time, place and person involved in the supposed contradiction. 1 Greenlf. Ev., § 462; *Glen* v. *Carson*, 3 G. Greene, 529; *State* v. *Kuhl*, 8 Iowa, 447; *Samuels* v. *Griffith*, 13 id. 103; *Strunk* v. *Ochiltree*, 15 id. 179. And the same rule applies to an impeachment by means of a former deposition of a witness. In such case, if it is claimed that there is a discrepancy between the statements in a former deposition and the testimony of the witness on the trial, such discrepancy must be first brought to the attention of the witness, so that he may have an opportunity to explain, before the deposition is admissible to contradict him. *Samuels* v. *Griffith*, 13 Iowa, 103. In the case under consideration the record purports to give the entire testimony of the witness Whitney, given on the trial, and it appears that his attention was in no manner drawn to his statements before the justice, nor was he asked any question by the State on cross-examination. The minutes, therefore, were improperly admitted as impeaching evidence, had they been otherwise competent for that purpose.

When the jury returned into court, after having agreed upon their verdict, and reported that they found the defendant guilty, the court propounded to them the follow-

ing question: "Do you find the defendant guilty of an assault with intent to murder?" which was objected to by defendant's counsel, and assigned as error.

When the jury in a criminal case have agreed upon their verdict and been conducted into court, their names must be called, and, if all answer, they are to be asked by the court or the clerk whether they have agreed upon a verdict, " and, if the foreman answers in the affirmative, they must, on being required, *declare* the same." Rev., §§ 4825, 4827. The jury may render a general or special verdict. § 4828. "A general verdict upon a plea of '·not guilty' is either 'guilty' or 'not guilty,' which imports a conviction or acquittal on every material allegation in the indictment." § 4829. These provisions of the statute contemplate that the jury, after informing the court of their agreement on a verdict, must, on being required by the court, declare the same, which may be done orally. In this case they declared that they found the defendant "guilty," which imported a conviction of the defendant on every material allegation in the indictment. The indictment charged the defendant with an assault with intent to commit murder, hence the legal effect of the verdict was that he was "guilty of an assault with intent to commit murder," an affirmative answer to the question propounded by the court.

The statute prescribes no peculiar form of words to be used by the court when it requires the jury to declare their verdict, and we see no impropriety in the form used in this case, nor that the defendant was, or could in any way be, prejudiced thereby. See *The State* v. *Shelledy*, 8 Iowa, 481; *The State* v. *McCombs*, 13 id. 426.

V.    The last error assigned is, that the court erred in overruling defendant's application for a change of venue. The application was based upon the ground of prejudice, on the part of the inhabitants of the county, against the defendant. The application

5.——change of
venue.

The State v. Collins.

stating the facts was sworn to by defendant, and supported by the affidavits of seven residents of the county, stating that "there is great excitement and strong prejudice existing in the county against the defendant, and that, as they verily believe, he cannot obtain a fair trial therein, in consequence of such prejudice."

On the other hand, the State filed the affidavits of twenty-two other residents of the county, stating that they "believe no such prejudice and excitement exists in the county, as that a jury of twelve impartial men cannot be impaneled before whom the defendant can receive a fair and impartial trial."

This question is one resting in the sound discretion of the court below, and when fully advised it must decide according to the very right of the matter. Rev., § 4333. The defendant could not demand the change as a matter of strict legal right, although the prejudice be stated in the very language of the statute; and, unless the discretion conferred by the statute upon the court applied to has been abused, this court will not interfere. *State* v. *Arnold*, 12 Iowa, 479, and cases cited; *State* v. *Ingalls & King*, 17 id. 8; *State* v. *Baldy*, id. 39; *The State* v. *Knight*, 19 id. 94.

The record fails to show that there was any abuse of discretion in this case, or that, upon the affidavits before the court, it did not decide upon the application for the change according to the very right of it.

For the errors before noticed the judgment is

Reversed.