**STATE of Iowa, Appellee,**

v.

**Harold L. TRAYWICK, Appellant.**

No. 89–1266.

Supreme Court of Iowa.

April 17, 1991.

Raymond E. Rogers, Appellate Defender, and Shari Barron, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., William E. Davis, County Atty., and James D. Hoffman, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Harold Traywick was convicted of two counts of burglary under Iowa Code sections 713.1 and 713.5 (1989). He appealed,

claiming error in (1) admitting illegally seized evidence; (2) excluding, on hearsay grounds, certain out-of-court statements; and (3) denying him a new trial on the ground of ineffective assistance of counsel. The court of appeals reversed on the hearsay issue and ordered a new trial. The State applied for further review. We vacate the court of appeals decision and affirm the district court.

The burglaries involved two houses in rural Scott County. One of the houses was owned by Arthur Schaeffer, whose brother-in-law, Richard Cavanaugh, lived nearby. Cavanaugh saw a car at the Schaeffer residence. The car left and drove past Cavanaugh. The car backed up, and the driver asked Cavanaugh for directions to Interstate 80. Schaeffer did not recognize the driver. After getting directions, the driver left but did not head for Interstate 80. Instead, he returned to the Schaeffer residence and pulled into the driveway.

Later that afternoon, Schaeffer called Cavanaugh and told him that his house had been burglarized. Cavanaugh told Schaeffer about the stranger in the car and told him he had written down the car's license number. The incident was reported to the police, who learned that the car belonged to Traywick's wife. Traywick was known by the police to have a history of burglaries. Based on these facts, the officers looked for Traywick's car, stopped it, and searched it. The search revealed several items which had been stolen from the homes.

## I. *The Search and Seizure Issue.*

█ Traywick argues that the trial court erred in admitting evidence of the search of his car because the officers lacked sufficient grounds to stop him. *See State v. Lamp*, 322 N.W.2d 48, 51 (Iowa 1982) (quoting *State v. Aschenbrenner*, 289 N.W.2d 618, 619 (Iowa 1980) (emphasis added) (state must show that officers had "specific and articulable cause to support a *reasonable belief* that criminal activity MAY have occurred").

Traywick, however, has waived this issue by failing to raise it in the district court. His claim of ineffective assistance of counsel, by which he seeks to excuse this failure, is more appropriately raised in a post-conviction proceeding under Iowa Code chapter 663A. *See State v. Slayton,* 417 N.W.2d 432, 436 (Iowa 1987).

## II. *The "Hearsay" Issue.*

Traywick's trial was severed from that of his alleged accomplice, Michael Tolbert. During Traywick's trial, his attorney attempted to use the testimony of Tolbert's girlfriend, Alberta Wells, to relate two conversations she had with Tolbert. The State's hearsay objections were sustained, and Traywick made an offer of proof. According to this offer, Wells would testify that Tolbert called her after his arrest and told her to "get rid of the rings." Traywick also attempted to use Wells to testify that, during a visit with Tolbert at the jail, he told her that "Harold [Traywick] wasn't with him." The court rejected both offers of proof. Traywick contends this was error because they were not offered for the truth of the matters asserted. *See* Iowa R.Evid. 801(c).

█ Regarding the out-of-court statement by Tolbert that Traywick "wasn't there," this is clearly offered to prove the truth of the matter asserted and is therefore hearsay. Iowa R.Evid. 801(c). Traywick contends it is an admission against interest and therefore an exception to the hearsay rule under Iowa Rule of Evidence 804(b)(3). This exception, however, requires (1) proof that the declarant, in this case Tolbert, was unavailable as a witness, Iowa R.Evid. 804(b); and (2) "corroborating circumstances [which] clearly indicate the trustworthiness of the statement." Iowa R.Evid. 804(b)(3). Traywick made neither showing, and the statement that "Harold wasn't with him" was properly rejected.

As to the statement to Mrs. Wells that she was to "get rid of the rings," the State assumes arguendo that it was error for the court to exclude it but argues that any error was harmless.

When an alleged error is not of constitutional magnitude,

the test of prejudice [for harmless error purposes] is whether it sufficiently appears that the rights of the complaining

party have been injuriously affected or that the party has suffered a miscarriage of justice.

*State v. Massey,* 275 N.W.2d 436, 439 (Iowa 1979). *Accord State v. Hackney,* 397 N.W.2d 723, 729 (Iowa 1986); *State v. Gansz,* 376 N.W.2d 887, 891 (Iowa 1985); *State v. Thompson,* 357 N.W.2d 591, 593–94 (Iowa 1984); *State v. Trudo,* 253 N.W.2d 101, 107 (Iowa 1977); *State v. Mayhew,* 170 N.W.2d 608, 619 (Iowa 1969).

■ When the error is of constitutional dimension, however, the State must show beyond a reasonable doubt that the error did not result in prejudice. *State v. Boley,* 456 N.W.2d 674, 678 (Iowa 1990); *State v. Coy,* 433 N.W.2d 714, 715 (Iowa 1988); *State v. Baldwin,* 396 N.W.2d 192, 197 (Iowa 1986); *see Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710–11 (1967).

Traywick contends that the State must meet this more stringent showing because his constitutional rights were affected; he claims he was denied his due process right to a fair trial by the court's rejection of this evidence. *See Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 313 (1973); *State v. Sowder,* 394 N.W.2d 368, 372 (Iowa 1986).

■ Conceivably under Traywick's theory, all rulings at the trial affect the fairness of the proceedings and therefore implicate due process rights. We do not believe this is so. If it were, there would be no basis for different rules with respect to the burden of showing a lack of prejudice; all appeals in criminal cases would be subject to the "beyond a reasonable doubt" showing. We do not believe this is mandated by *Chapman.* An allegedly erroneous ruling, we believe, must go to the heart of the case in order to be considered of such magnitude as to implicate the due process clause. *See, e.g., Chambers,* 410 U.S. at 296–98, 93 S.Ct. at 1046–47, 35 L.Ed.2d at 309–10 (denial of use of out-of-court admissions by third party in murder case held to be denial of due process); *Garner v. Louisiana,* 368 U.S. 157, 163, 82 S.Ct. 248, 251, 7 L.Ed.2d 207, 213 (1961) (convictions de-

void of evidentiary support unconstitutional under due process clause).

As *Chambers* stated, the ruling must call into question the "integrity of the fact-finding process." 410 U.S. at 295, 93 S.Ct. at 1046, 35 L.Ed.2d at 309 (quoting *Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508, 510 (1969)).

■ Even if we assume the hearsay ruling in this case is subject to the constitutional test for harmless error, we cannot accept Traywick's argument that the error is reversible. Contrary to his suggestion that the ruling went to the heart of his defense, the statement about getting rid of the rings is a two-edged sword. Traywick and Tolbert were both suspected of the crime, and tying Tolbert to the possession of the rings would implicate Traywick as well. We conclude that any usefulness of the statement was marginal, and any error in its rejection was harmless beyond a reasonable doubt.

III. *The Ineffective–Assistance–of–Counsel Claim.*

At Traywick's trial, his counsel inadvertently struck the wrong juror. He knew this at the time the jury was sworn but did not bring it to the court's attention until after the guilty verdict was returned. We said in *State v. Jackson,* 397 N.W.2d 512, 514 (Iowa 1986):

> There is something fundamentally unfair about letting a person with a complaint have it both ways. Such a person is not entitled to a no-lose advantage. Defendant should not be allowed to await the verdict, which might have acquitted him, before alerting the trial court of his complaint.

■ That rationale applies here. The defendant cannot await the jury verdict and then raise an issue of which he was aware from the beginning. Any error on this issue has been waived. Any claim of ineffectiveness of counsel is reserved for postconviction proceedings if Traywick elects to pursue them.

We find no reversible error in the record. Accordingly, we vacate the court of appeals decision and affirm the district court.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.