**IN THE COURT OF APPEALS OF IOWA**

No. 15-0544
Filed July 27, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ANTONIO HUTCHINS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Andrea J.

Dryer, Judge.


        Antonio Hutchins appeals his convictions for first-degree murder and

willful injury.  **AFFIRMED.**


        Alfredo G. Parrish and Andrew J. Dunn of Parrish, Kruidenier, Dunn,

Boles, Gribble, Gentry, Brown & Bergmann, L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant

Attorney General, for appellee.


        Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

Antonio Hutchins shot two men in a grocery store parking lot; one of the men died. Hutchins admitted to the shootings but claimed self-defense. A jury found him guilty of first-degree murder and willful injury.[1] On appeal, Hutchins contends (I) the district court unreasonably limited his opening statement and (II) the district court abused its discretion in excluding (A) evidence of the decedent's toxicology results and (B) evidence of a witness' subsequent assault on Hutchins' brother.

## I. *Opening Statement*

The pertinent facts and proceedings relating to this issue are as follows. Hutchins knew the person he shot and killed as a violent person who threatened his family. According to Hutchins and his friend Lawrence Lewis, that person— Cedrick Joe Matlock—threatened him with an assault rifle a week before the shooting.

Hutchins expressed his intent to rely on self-defense as justification for the shooting. The State responded by filing a motion in limine seeking to exclude "reputation or opinion evidence of . . . Matlock's violent, quarrelsome or turbulent character" and "prior specific instances of conduct by . . . Matlock." Hutchins resisted the motion on the ground that "an order from the court precluding [introduction of this evidence] would be erroneous and significantly undermine Hutchins' constitutional right to present a defense." Following a hearing, the district court granted the motion, as follows:

---

[1] Hutchins also pled guilty to possession of a firearm as a felon.

The defense shall not make any reference to and shall not disclose to the jury any potential evidence concerning the deceased's reputation or character trait for violence or any potential evidence concerning the violent, quarrelsome, dangerous or turbulent character of the deceased, including, but not limited to, evidence of specific instances of conduct to demonstrate character, until "the slightest" evidence has been produced to support the defendant's theory of self-defense and until further offers of proof and objections have been made to the court prior to a definitive ruling on admissibility.

Before opening statements, Hutchins' attorney had an extensive discussion with the court about the boundaries of the court's ruling. Counsel acknowledged he would be prohibited from mentioning "collateral evidence [painting] Matlock as a bad guy" but said he planned to raise the assault rifle incident "to show how [Hutchins] has a self-defense."[2] He continued, "The evidence I'm talking about in my opening statement is clear and I don't think falls into the motion in limine, because Mr. Hutchins knew a week earlier that this guy was after him and pulled a gun on him in this same parking lot." The court responded as follows:

Specific instances of conduct, reputation evidence, opinion evidence as far as peacefulness—not peacefulness, or the opposite of, turbulence, violent character of the deceased, stay away from those more specific things . . . during your opening statement, because those are more problematic issues. But if you focus on just stating that your client has the self-defense defense that he is going to ask the jury to consider, and with the understanding that he is going to present the slightest degree of evidence in support of that defense that would be required, yes, you can place that issue in front of the jury during your opening. . . . But like I said, just don't go into the other character, reputation, opinion, other specific instances that will be more problematic down the line.

---

[2] In light of this acknowledgement, we focus exclusively on the court's prohibition on mentioning the assault rifle incident.

Hutchins' attorney gave an opening statement that made no mention of the assault rifle incident. After concluding his statement, he asked to make a supplemental statement about the incident on the ground the prosecutor "open[ed] the door to it [by telling the jury] 'you have to determine who started the fight.'" The court agreed an additional statement might be an option following the close of the State's case but, after further discussion about pertinent precedent, ruled as follows:

> I am not reconsidering that ruling. The parties will have the opportunity to fully present their case and their defense with evidence that's relevant to those matters. We'll address those through offers of proof when we get to the appropriate points. Obviously counsel will be given full opportunity to argue the matter on closing as well and to have the jury fully instructed on their theories of defense and of the case.

Defense counsel sought a specific ruling on the assault rifle incident and made a professional statement about the incident as follows:

> And my offer of proof would be we would present evidence that a week earlier Mr. Matlock assaulted Mr. Lewis and Mr. Hutchins in the parking lot with an assault weapon. He came after Mr. Hutchins; made threatening remarks towards him, such as he was going to kill him; and that Mr. Lewis used his efforts to try to diffuse the situation so they could escape. That would be my offer of proof, so the court would be clear on that.

The district court decided to immediately accept offers of proof from Hutchins and Lewis. Based on those offers, the court concluded the threshold for discussing the assault rifle incident had been satisfied. Nonetheless, the court declined to allow the defense another opening statement, reasoning that the statements were not evidence and the court would be faced with the prosecution's "tit for tat" request for a rebuttal opening statement. The court ruled, "We're not going to do any more openings. Let's deal with the evidence as it is." However, the court

amended its ruling on the State's motion in limine to permit trial testimony about the assault rifle incident.

Hutchins argues the court's limitation of his opening statement amounted to a violation of his constitutional right to present a defense. In his view, "Because opening statements are a critical stage of trial and essential to a defendant's presentation of his version of the facts and defense, this Court should hold that the United States and Iowa Constitutions guaranteed Hutchins the right to make an opening statement without unreasonable restrictions."

The State preliminarily counters that this issue was not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). We disagree because, as noted, Hutchins raised the constitutional issue in his resistance to the State's motion in limine and the motion, resistance, and ruling formed the basis of the court's subsequent discussions about the scope of opening statements. Accordingly, we conclude Hutchins' constitutional challenge to the limitation of opening statements was preserved for our review.

The Iowa Supreme Court explained the constitutional right to present a defense as follows:

> The right to present a defense stems from the Sixth Amendment right to a fair trial. . . . The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own

> witnesses to establish a defense. This right is a fundamental element of due process of law.

*State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012). The district court's limitation of defense counsel's opening statement did not implicate this right.

Hutchins was allowed to call his own witnesses to testify about the facts supporting his self-defense theory, including the assault rifle incident, and defense counsel's questions placed the incident in context. Although jurors did not hear about this incident in opening statements, defense counsel apprised them of Hutchins' intent to rely on self-defense during pre-opening voir dire. In closing arguments, jurors were again given the framework within which to contextualize and analyze the incident. Finally, the jury instructions included detailed language about the defense. The Iowa Supreme Court has stated, "An allegedly erroneous ruling . . . must go to the heart of the case in order to be considered of such magnitude as to implicate the due process clause." *State v. Traywick*, 468 N.W.2d 452, 455 (Iowa 1991). The court's limitation of defense counsel's opening statement did not meet this test.

The real question is whether the district court abused its discretion in denying Hutchins the opportunity to refer to the incident in the opening statement. *See State v. Veal*, 564 N.W.2d 797, 803 (Iowa 1997) ("The scope of opening statements lies within the discretion of the trial court; we review for abuse of discretion."), *overruled on other grounds by State v. Hallum*, 585 N.W.2d 249, 254 (Iowa 1998). While evidence of a deceased's character generally is inadmissible, "the violent, quarrelsome, dangerous or turbulent character of the deceased may be shown" where "the accused asserts he or she

acted in self-defense and the slightest supporting evidence is introduced." *State v. Jacoby*, 260 N.W.2d 828, 837 (Iowa 1977). The evidence is admissible "[t]o show the state of mind of the defendant, the degree and nature of his or her apprehension of danger which might reasonably justify resort to more prompt and violent measures of self-preservation." *Id.*

*State v. Miller*, 359 N.W.2d 508, 509-10 (Iowa Ct. App. 1984), is instructive. There, we reversed the defendant's murder conviction based on the district court's limitation of defense counsel's opening statement. *See Miller*, 359 N.W.2d at 509-10. We concluded:

> [The] defendant should have been able to discuss prior violent acts of the victim. The record reflects that defendant fully intended to introduce such evidence at trial to show his state of mind at the time the crime was committed. Furthermore, the evidence was extremely relevant to the defendant's claim of self-defense.

*Id.*

As in *Miller*, Hutchins sought to introduce the assault rifle incident to explain his state of mind when he shot Matlock a week later. And, as in *Miller*, the district court disallowed any reference to prior violent acts of the victim. Because *Miller* is virtually indistinguishable, we conclude the district court abused its discretion in disallowing a reference to the assault rifle incident during opening statements.

This does not end our analysis. In *Miller*, the court acknowledged the State's harmless error argument but did not address it, choosing to reverse and remand for new trial based on the violation alone. *Id.* at 510, 512. However, our courts have since applied a harmless error analysis before deciding whether to reverse, both in the constitutional and evidentiary context. *See State v. Frei*, 831

N.W.2d 70, 81 (Iowa 2013) (concluding the prosecutor's references in opening statements to facts excluded by a ruling on a motion in limine "did not produce such prejudice as would deny [the defendant] a fair trial"), *overruled on other grounds by Alcala v. Marriott Intern, Inc.*, 2016 WL 3201687, ___ N.W.2d ___, ___ (Iowa 2016)); *Traywick*, 468 N.W.2d at 454-55 ("When an alleged error is not of constitutional magnitude, the test of prejudice [for harmless error purposes] is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice."). Significantly, Hutchins and the State included harmless error analyses in their briefs. We conclude a harmless error analysis is necessary and appropriate in this context.

As for the nature of the analysis, the State suggests we examine the credibility of the self-defense testimony. In its view, "[p]resenting an opening statement without character evidence did not result in unfair prejudice when much of that evidence was fabricated and exaggerated." It is not our role to assess witness credibility. *See State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999) ("[I]t is for the jury to judge the credibility of the witnesses and weigh the evidence."). Accordingly, we decline to apply this prejudice test.

Alternatively, the State argues against a finding of prejudice because "strong evidence disproved the defendant's claim of self-defense." This test is equally unsatisfactory because it does not address the defense argument that the outcome might have been different had the defense had an opportunity to present and contextualize its defense at the outset.

Finally, the State contends that it, too, was prejudiced because the limitation applied equally to the prosecutor's opening statement. This argument ignores the State's strong interest in excluding—rather than introducing—any evidence of the assault rifle incident, as reflected in its motion in limine. The State would have had no reason to bring up the assault rifle incident in its opening statement.

In sum, we are not persuaded that any of the State's harmless error arguments truly address whether Hutchins' rights were injuriously affected by the district court's limitation of his attorney's opening statement. *See Traywick*, 468 N.W.2d at 454-55. We are more persuaded by an analysis of a court in another jurisdiction. *See People v. Garrett*, No. 4-13-0856, 2015 WL 8170277, at *5-6 (Ill. App. Ct. Dec. 4, 2015). In *Garrett*, the court addressed whether the district court abused its discretion in limiting defense counsel's opening statement. *See id.* The court elected to decide the issue on prejudice grounds. *See id.* at *6. Instead of examining the trial evidence and the strength of the State's case, the court looked at whether the jurors were aware of the defense despite the limitation on opening statements. *See id.* The court found "the jury knew [from the outset] it would be required to judge and question the truthfulness of" a State witness and defense counsel informed the jury during opening, "[T]here's . . . two sides to every story at least." *Id.* In addition, the court noted that jurors did not have to wait long before the defense presented its case and, "[g]iven this short time period, it is unlikely the jury would have been unable to weigh defendant's credibility against [the State witness] once it learned of defendant's side to the story." *Id.* Finally, the court stated, "Although defendant was unable to raise the

theory in his opening statement, he was able to introduce his theory through his own testimony, in closing argument before the jury, and in jury instructions." *Id.* We find this prejudice analysis persuasive and we apply it here.

As discussed earlier, Hutchins raised his defense with potential jurors during voir dire, presented evidence of the assault rifle incident at trial, and placed the incident in context both during trial and in closing argument. The following portion of his attorney's closing argument is enlightening:

> [W]e know that [Matlock] threated [Hutchins] before. . . . You consider the threat the week before. . . . [Y]ou also can consider the threat when you decide who was the aggressor. . . . [W]ho would you think would be the aggressor? Duh. Doesn't take a whole lot to figure [out it] was Mr. Matlock. [Hutchins] was afraid of Matlock, and any reasonable person would have been afraid of him.

Later, counsel argued Hutchins "thought [Matlock] was reaching for a gun, this man was known to carry a gun . . . and he does what any reasonable human being who, even without this long history, would reach out to protect himself, and that's what he did."

The jury instructions further clarified Hutchins' defense. One stated, "The defendant claims he acted with justification." Another explained a person "is justified in using reasonable force if he reasonably believes the force is necessary to defend himself from any imminent use of unlawful force." A third explained, "It is not necessary that there was actual danger, but the defendant must have acted in an honest and sincere belief that the danger actually existed." And a fourth instruction stated, "If in the defendant's mind the danger was actual, real, imminent or unavoidable, even though it did not exist, that is sufficient if a reasonable person would have seen it in the same light."

On this record, we conclude Hutchins was not prejudiced by the district court's limitation of his opening statement. Accordingly, reversal is not required.

## II.     *Evidentiary Rulings*

Hutchins contends the district court abused its discretion in excluding (A) evidence of Matlock's toxicology results and (B) evidence of an assault of Hutchins' brother, Troy Sallis, after the shooting. Again, Hutchins challenges the rulings on constitutional as well as evidentiary grounds. The constitutional ground was not preserved for our review. Accordingly, we will focus exclusively on the evidentiary challenge, reviewing the district court's rulings for an abuse of discretion. *See State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014) ("The district court's rulings on the admissibility of evidence are reviewed for abuse of discretion.").

Both rulings are governed by the evidentiary standard set forth in Iowa Rule of Evidence 5.403. That rule states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Evid. 5.403.

### A.     *Evidence of Matlock's Toxicology Results*

The State's motion in limine sought to exclude "evidence as to the presence of any intoxicating or controlled substances in Cedrick Matlock's blood at the time of his death." Following a hearing, the district court ruled as follows:

> The defense shall not make any reference to and shall not disclose to the jury any potential evidence concerning the presence of alcohol or controlled substances in the deceased's body until

further offers of proof and objections have been made to the court prior to a definitive ruling on admissibility for the reason that, generally, the deceased's use of alcohol or illegal drugs is the type of irrelevant and highly prejudicial evidence that should be excluded.

At trial, Hutchins made an offer of proof as to alcohol and drugs in Matlock's system and the potential effect of these substances on his behaviors. The court ruled: "[T]he presence of alcohol and marijuana, marijuana metabolites, in the deceased's system is not admissible. It is more prejudicial than probative."

Hutchins takes issue with the court's ruling on the basis of *State v. Collins*, 32 Iowa 36, 38 (1871). In that case, an "excessively intoxicated" man—"as drunk as a man could be and stand up,"—"put his hand on the defendant's shoulder and turned him partly around, at which time the defendant sprang to his feet, took hold of [the man] with his left hand . . . , and stabbed him with the large blade of a common sized jack-knife." *Collins*, 32 Iowa at 38. The court concluded the district court should have admitted evidence of the man's quarrelsome nature when intoxicated. *See id.* at 39.

The facts in Hutchins' case are distinguishable. While there was evidence Matlock's ingestion of drugs the week before the shooting contributed to violence that day, there was scant evidence of a similar nexus on the day of the shooting. Given the marginal probative value of this evidence and the inflammatory nature of the testimony, we conclude the court did not abuse its discretion in excluding the evidence. *See State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004) ("[W]e give much leeway [to] trial judges who must fairly weigh probative value against probable dangers." (internal quotation marks and citation omitted)); *see also*,

*e.g.*, *State v. Leslie*, No. 12-1335, 2014 WL 70259, at *5-6 (Iowa Ct. App. Jan. 9, 2014) (affirming the exclusion of evidence offered by the defendant to support his claim of self-defense, including evidence of the victim's association with a group that "had a reputation for being armed and violent"; the victim's involvement with drugs or drug sales to show "it was more likely he would be armed at the time of his interaction with [the defendant]"; and the victim's rap videos which "mention[ed] guns" to show "his knowledge of guns" in part on the grounds that the evidence "would not necessarily show [the victim] was armed and/or violent at the time of his interaction with" the defendant and "the mere possession of crack cocaine is not evidence of a violent character"); *Holmes v. State*, No. 96-1527, 2001 WL 246429, at *2-3 (Iowa Ct. App. Mar. 14, 2001) (affirming the exclusion of evidence that victim "was a drug dealer and was known to carry a gun," offered to support the defendant's theory of self-defense, concluding the evidence was "unduly prejudicial"); *State v. Shearon*, 449 N.W.2d 86, 88 (Iowa Ct. App. 1989) (affirming the exclusion of testimony from a witness with regard to "the violent conduct of the victim toward her on the night he was killed," offered by the defendant to support a claim of self-defense, because it "could have influenced the jury to believe that the victim 'got what he deserved'" and "would have been substantially prejudicial and would have outweighed the probative value of her testimony").

### B.     *Evidence of Subsequent Assault*

A man named Lee Sisk was with Matlock when he was shot and testified that he saw Hutchins pull out a pistol and aim it at Matlock's chest. At trial, Hutchins made an offer of proof that Sisk assaulted his brother ten months after

the shooting and apparently said, "This is for Joe Matlock." In the offer of proof, Sisk admitted he pled guilty to willful injury in connection with this assault.

The district court excluded the challenged evidence, reasoning: "[U]nder rule 5.403 that evidence of underlying circumstances, including who the victim was in [the willful injury case], are irrelevant to matters in this case and that they should be excluded on grounds of prejudice, confusion, or waste of time." We discern no abuse of discretion in this ruling. The evidence of Sisk's assault on Hutchins' brother was at best only marginally relevant to Hutchins' shooting of Matlock and his friend. While it may have shown Sisk's motive for revenge, it added little to Hutchins' theory that he shot Matlock because of Matlock's threats against him. Additionally, the potential for confusion was high, given the reference to a separate criminal matter. We affirm the exclusion of this evidence.

Hutchins' judgment and sentence are affirmed.

**AFFIRMED.**