STATE of Iowa, Appellee,

v.

Ruthann VEAL, Appellant.

No. 95–2002.

Supreme Court of Iowa.

May 21, 1997.

Alfredo Parrish and Andrew J. Dunn of Parrish, Kruidenier, Moss, Dunn & Montgomery, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and D. Raymond Walton, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

The overall issue in this appeal is whether any of a number of alleged errors by the trial court requires reversal of defendant's conviction for first-degree murder in violation of Iowa Code section 707.2 (1993). Finding no reversible error by the trial court, we affirm.

I. *Background proceedings.* Defendant Ruthann Veal was arrested in June 1993 in connection with the death of Catherine Haynes in Waterloo, Iowa. Veal, who was fourteen years old at the time of her arrest, was waived from juvenile court to criminal adult court and charged by trial information with first-degree murder under Iowa Code section 707.2. The facts leading to that charge will be discussed later in connection with the issues to which they are relevant.

Prior to trial, defendant Veal filed a motion for change of venue, claiming that she could not receive a fair and impartial trial in Black Hawk County because of the publicity the case had generated in that area. The district court overruled the motion, and the case proceeded to a jury trial.

After a three-week trial, the jury found Veal guilty of first-degree murder. Veal filed a motion for new trial, again claiming that the publicity surrounding the case precluded a fair and impartial trial. In addition, she alleged a number of errors by the trial court. While that motion was pending, Veal learned that the trial judge, James C. Bauch, had been present in a bar with members of the county attorney's staff following the guilty verdict, and she filed a motion to recuse the trial judge. Judge Bauch recused himself, and Judge Robert J. Curnan was assigned by the chief judge of the judicial district to preside over the remaining proceedings. After a hearing, Judge Curnan overruled Veal's motion for new trial and sentenced her to serve a life term in prison. *See* Iowa Code § 902.1.

Defendant Veal appealed from the district court's judgment and sentence. Defendant raises several issues on appeal, contending: (1) the evidence was insufficient as a matter of law to convict her of first-degree murder; (2) the district court's denial of her motion for change of venue deprived Veal of her constitutional right to a fair trial; (3) her constitutional rights were violated by the trial court's failure to address the prosecutor's alleged pretextual reasons for his peremptory challenges or strikes to three black prospective jurors; (4) Veal's right to confront witnesses was denied when the trial court prohibited cross-examination of three witnesses regarding their juvenile records; (5) the trial court abused its discretion when it excluded from evidence the juvenile records of the three witnesses; (6) the trial court erred in sustaining the State's motion in limine and overruling defendant's offers of proof and thus prohibiting Veal from offering as evidence statements she had made to the police at the time of her arrest and to another person; (7) the trial court erred in excluding those statements of defendant once the State allegedly had "opened the door" to the statements; (8) testimony by a state's witness regarding Veal's request for counsel violated her constitutional rights; (9) the trial court erred in allowing Tequisha Parsons to testify for the State although prosecutors did not disclose to defense counsel the fact Parsons revised her out-of-court statements two weeks before testifying; (10) the trial court abused its discretion in restricting Veal's cross-examination of Parsons and two other witnesses; (11) the trial court abused its discretion in restricting Veal's closing argument; (12) the trial court abused its discretion in refusing to submit to the jury three jury instructions proposed by Veal; (13) the trial court abused its discretion by instructing the jury concerning Veal's other criminal acts; (14) Veal was denied her constitutional right to a trial by a fair tribunal; and (15) the cumulative effect of the trial court's alleged errors was a denial of Veal's constitutional right to a fair trial.

II. *Standard of review.* The variety of issues in this case requires us to employ several standards of review depending on the issue being addressed.

■ When the defendant asserts constitutional violations, our review is de novo. *State v. Finnel,* 515 N.W.2d 41, 43 (Iowa 1994).

■ In reviewing a claim that the evidence was insufficient to support the jury's verdict, we must determine whether there is substantial evidence supporting the verdict. *State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984). Evidence is substantial if it could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.*

■ A challenge to the district court's denial of a motion for change of venue requires us to review the record de novo; we reverse if the trial court abused its discretion. *State v. Siemer*, 454 N.W.2d 857, 860 (Iowa 1990).

■ The scope of opening statements lies within the discretion of the trial court; we review for abuse of discretion. *Kester v. Bruns*, 326 N.W.2d 279, 281 (Iowa 1982).

■ Evidentiary matters are generally left to the trial court's discretion. *State v. Hubka*, 480 N.W.2d 867, 868 (Iowa 1992). Thus, we reverse rulings on such matters only when it is shown that the trial court abused its discretion. *Id.*

■ The trial court must exercise its discretion in determining the scope of closing arguments; our review is for abuse of discretion. *State v. Melk*, 543 N.W.2d 297, 301 (Iowa App.1995).

■ We review the trial court's rulings with respect to jury instructions for abuse of discretion. *State v. Webb*, 516 N.W.2d 824, 831 (Iowa 1994). In addition, reversal is warranted only when any error is prejudicial. *Id.*

III. *Discussion of the issues.* We turn now to the issues raised on appeal by the defendant. Because it affords a factual framework for our review, we begin with a discussion of defendant Veal's challenge to the trial court's denial of her motion for judgment of acquittal. We then address her other arguments in general according to the chronology of the trial.

■ A. *Trial court's denial of defendant's motion for judgment of acquittal.* In her motion for judgment of acquittal, made at the close of the evidence—in accordance with the trial court's request—rather than at the close of the State's case, defendant Veal contended that there was insufficient evidence to support a jury verdict of guilty of first-degree murder. *See* Iowa R.Crim. P. 18(8). In particular, she argued that the State's key evidence came from a witness whose credibility is open to doubt. On appeal, Veal challenges the trial court's denial of her motion for judgment of acquittal.

The trial court instructed the jury that the State had to prove, beyond a reasonable doubt, all of the elements in one of the following alternatives:

*Alternative "A":*

1. On or about the 15th/16th day of June, 1993, Ruthann Veal stabbed Catherine Haynes.

2. Catherine Haynes died as a result of being stabbed.

3. Ruthann Veal acted with malice aforethought.

4. Ruthann Veal acted willfully, deliberately, premeditatedly and with a specific intent to kill Catherine Haynes.

*Alternative "B":*

1. On or about the 15th/16th day of June, 1993, Ruthann Veal stabbed Catherine Haynes.

2. Catherine Haynes died as a result of being stabbed.

3. Ruthann Veal acted with malice aforethought.

4. Ruthann Veal was participating in the offense of Robbery in the First Degree.

*Alternative "C":*

1. On or about the 15th/16th day of June, 1993, Ruthann Veal stabbed Catherine Haynes.

2. Catherine Haynes died as a result of being stabbed.

3. Ruthann Veal acted with malice aforethought.

4. Ruthann Veal was participating in the offense of Willful Injury.

■ In reviewing a claim that the evidence was insufficient to support the jury's verdict, we must determine whether there is substantial evidence supporting the verdict. *LeGear*, 346 N.W.2d at 23. Evidence is sub-

stantial if it could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* "We view the evidence in the light most favorable to the State, making any legitimate inferences that may fairly and reasonably be deduced from the evidence." *State v. Romeo,* 542 N.W.2d 543, 545 (Iowa 1996).

A reasonable jury could find the following facts from the record. Catherine Haynes, age sixty-six, was stabbed to death at her Waterloo home sometime between 6:00 p.m. on June 15 and 6:00 a.m. on June 16, 1993. During the early evening hours of June 15, witnesses saw a police officer chase Veal, who had run away from a juvenile home, through a residential neighborhood. Veal, who was six feet tall and weighed 180 pounds, was wearing green pants, a white shirt, and hiking boots. She ran through backyards, onto a porch, and into a garage before the police officer gave up his pursuit.

At about 8:45 or 9:00 p.m., victim Catherine Haynes visited briefly at a neighbor's house across the street from her own house. When Haynes returned to her home, her neighbor observed that although the screen door to Haynes' home was shut, the inside door was open. Earlier in the evening, the neighbor had noticed that both the front and back doors to Haynes' home were open.

Between 10:00 and 11:00 p.m., a number of long-distance telephone calls were placed from Haynes' residence to the residences of friends and relatives of defendant Veal. These friends and relatives of Veal testified that they did not know Catherine Haynes.

At 11:45 p.m. a woman called the Yellow Cab Company to request that a cab pick up a person at Haynes' address. The ultimate destination for the cab indicated by the caller was to be the address of a person who knew defendant Veal but not Haynes. When the cab driver arrived at Haynes' house, a woman leaned out the door, so that only her head and shoulders were visible, and told the driver the cab was no longer needed. The cab driver later picked Veal's picture out of a police photographic lineup as the woman he saw at Haynes' house.

Defendant Veal spent the rest of that night and the following two days in various locations in Waterloo, Cedar Rapids, and Iowa City. At about midnight on June 15, Veal drove around in Haynes' car near a Waterloo convenience store, showed several young people that she had some credit cards, and offered to pay their way if they accompanied her to Cedar Rapids. Veal drove to Cedar Rapids and back to Waterloo and then drove to Cedar Rapids a second time with Tarik Tate and Tequisha Parsons. The three arrived at the Cedar Rapids home of Elizabeth Richardson, Tate's grandmother, at about 6:00 or 6:30 a.m. on June 16. Veal and Parsons remained in the car for several minutes while Tate went into Richardson's house. According to Parsons:

> Me and Ruthann was sitting there and she told me that she did something bad. And I wanted to know what she did bad and she told me that the credit cards and the car was stolen. And I was like—I asked her how she got the credit cards and the car and she told me she killed someone or she killed a lady. And I asked her how'd you kill her and she said she stabbed her and I was like oh. And she told me that she was getting ruthless.

Veal, Parsons, and Tate stayed at Richardson's house until that afternoon, when they decided to go shopping with a fourth person. Veal drove the group to Iowa City in Haynes' car. After using Haynes' credit card to buy clothes and shoes for herself and the others, Veal saw a security guard at a shopping mall and decided to leave Iowa City.

After returning to Cedar Rapids, defendant Veal told Parsons that she needed to get rid of the car and parked it about a block away from Richardson's house. At Richardson's house, Veal and Parsons changed into clothes they had bought in Iowa City, and then Veal, Parsons, and Tate walked back toward the car. Veal hid the clothes she had been wearing earlier—the green slacks and white shirt—in a bush.

Haynes' body was discovered at her Waterloo home that afternoon. She was wearing the same clothes she had worn when she visited with her neighbors the previous evening. She apparently had struggled with her

murderer and had been stabbed twenty-three times. Tests indicated Haynes had died between 6:00 p.m. on June 15 and 6:00 a.m. on June 16.

During the afternoon of the next day, June 17, while walking with Parsons near Richardson's Cedar Rapids house, defendant Veal threw Haynes' credit cards and car keys into a trash can.

Police investigators later found physical evidence linking Veal to the murder. In Haynes' house, investigators found Veal's fingerprint on a table and a false fingernail, which had been attached to one of Veal's fingers, near Haynes' body in an upstairs hall. A footprint found in an upstairs bedroom matched those made by Veal's shoes. Veal's clothes and person provided further evidence. Her white shirt and green pants were stained with human blood, although witnesses had seen no such stains at 6:00 p.m. on June 15. Veal's shoes had bloodstains that were consistent with Haynes' blood but inconsistent with Veal's blood. A medical examination on June 18 disclosed that Veal's arms had bruises that were one to five days old, supporting the theory that she had been involved in a recent struggle. Annette and Tonja Sexton, acquaintances of Veal, testified that they had not seen bruises on Veal's arms when she visited with them at about 6:00 p.m. on June 15.

Defendant Veal points to inconsistencies in witness Parsons' statements to police. In separate statements, Parsons gave different information to police about such matters as her name, where she was from, her acquaintance with Veal, and the timing of Veal's alleged confession to Parsons. Veal claims that Parsons' false statements regarding those matters cast serious doubt on Parsons' account of what Veal told her about Haynes' murder.

Veal further contends that there is considerable evidence supporting her defense that persons other than Veal committed the murder. Neighbors of Haynes testified that they heard voices and noises outside at about 3:00 a.m. or 4:00 a.m. on June 16. The cab driver's description of Veal did not match her height or weight, and a package of cigarettes found in Haynes' home was a different brand than those smoked by Veal.

Our review of the record, however, convinces us that there is substantial evidence supporting each of the elements for first-degree murder as set forth in the court's instructions to the jury. The evidence placing defendant Veal in Haynes' house at the time of the murder, Veal's possession and use of Haynes' car and credit cards, the bloodstains on Veal's clothing and shoes, and the bruises on Veal's arms support Parsons' account that Veal told her she had committed the murder. A reasonable jury could conclude beyond a reasonable doubt that Veal murdered Haynes and that she stole and used Haynes' car and credit cards thereafter.

Veal does not point to any particular essential element of the crime that was not supported by substantial evidence.

Moreover, the inconsistencies in Parsons' statements and the testimony relied upon by Veal do not render that incriminating evidence less compelling. Parsons' inconsistent statements did not concern matters material to this case, but rather were related to her status as a runaway from a group home. Parsons' testimony therefore was not so impossible, absurd, and self-contradictory that the jury could not give it weight. *See State v. Smith,* 508 N.W.2d 101, 102–03 (Iowa App. 1993). Similarly, the other evidence highlighted by Veal does not undermine the physical evidence and testimony linking her to the murder. The cab driver's assessment of the size of the woman he saw at Haynes' house was based on his view of her head and shoulders as she leaned out the door. The testimony about voices and noises in Haynes' neighborhood and the brand of cigarettes found in Haynes' house simply is not sufficient to overcome, as a matter of law, the strong evidence against Veal.

We conclude that substantial evidence supports the jury's verdict of guilty and the trial court did not err in overruling defendant Veal's motion for judgment of acquittal.

█ B. *Defendant's motion for change of venue.* Defendant Veal claims that because of the extensive publicity attending this case, the trial court's denial of her mo-

tion for change of venue deprived her of her right, under the Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 9 and 10 of the Iowa Constitution, to a fair trial. We review the court's ruling de novo to determine whether it acted within the scope of its discretion. *Siemer*, 454 N.W.2d at 860.

■ In reviewing that contention concerning a change of venue, we consider Iowa Rule of Criminal Procedure 10(10)(b), which provides that the district court may transfer venue of a case to another county, upon motion of the defendant, "[i]f the court is satisfied ... that such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved" with a jury from that county. A defendant seeking reversal on the basis of jury prejudice must show: (1) the publicity attending the trial was "so pervasive and inflammatory that prejudice must be presumed," or (2) the jury was actually prejudiced. *Siemer*, 454 N.W.2d at 860.

■ In order to determine whether the publicity in this case was so pervasive and inflammatory that jury prejudice must be presumed, we examine the tone and accuracy of the articles or broadcasts, the passage of time between publication and the date of trial, and the impact of the publicity on the jurors' ability to render an impartial verdict. *See id.* at 860; *State v. Walters*, 426 N.W.2d 136, 139 (Iowa 1988). While the publicity surrounding Haynes' murder certainly was pervasive, the record shows that it was generally factual and informative in tone and accurate. Almost a year passed between the initial publicity in connection with the murder and the start of defendant Veal's trial. Much of the publicity in the intervening time was related to procedural matters. Exhaustive voir dire of the prospective jurors led to the removal of those persons who had a fixed opinion of Veal's guilt. Thus, we do not believe that jury prejudice can be presumed here.

Similarly, there is no evidence of actual prejudice on the part of the jury. Of the twelve members of the jury, two had never heard of the case, nine had heard of the case but had not formed an opinion, and one had formed an opinion but stated he could set it aside and decide the case on the basis of the evidence.

Having considered all the arguments made by defendant concerning this assignment, we find no error in the trial court's denial of Veal's motion for change of venue under the provisions of rule 10(10)(b), the Sixth and Fourteenth Amendments of the United States Constitution, and article I, sections 9 and 10 of the Iowa Constitution.

C. *Peremptory strikes of three black prospective jurors.* Veal, who is black, argues that her right to equal protection of the law, guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 10 of the Iowa Constitution, was denied by the prosecutor's peremptory strikes removing three black prospective jurors from the jury panel. Our review of this constitutional claim is de novo. *Finnel*, 515 N.W.2d at 43.

■ The United States Supreme Court has set forth, under the Equal Protection Clause, a three-part analysis for determining whether peremptory challenges or strikes[1] have been exercised impermissibly on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 96–98, 106 S.Ct. 1712, 1723–24, 90 L.Ed.2d 69, 87–89 (1986). First, the defendant must establish a prima facie case of purposeful discrimination by showing that he or she is a member of a cognizable racial group and that the prosecutor has used peremptory challenges to remove prospective jurors of the defendant's race, raising an inference that such exclusion is discriminatory. *Id.* at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88. Second, the burden shifts to the State to articulate a race-neutral reason for challenging the jurors. *Id.* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Finally, the trial court must determine whether the defendant has established purposeful discrimination.

---

1. In a class "A" felony murder case, the State and defendant shall each strike ten prospective jurors. Iowa R.Crim. P. 17(9).

*Id.* at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88–89. In other words, the court must decide whether to believe the prosecutor's explanation for the peremptory challenges. *United States v. Perez,* 35 F.3d 632, 636 (1st Cir. 1994). The trial court's decision in this regard is accorded great deference on appeal. *Id.*

 In this case, the controversy centers on the third part of the analysis. The panel of thirty-two potential jurors that had been passed for cause included six black jurors. The State then struck seven white jurors and three black jurors, and defendant Veal struck ten white prospective jurors, so that the actual jury that decided the case included nine white jurors and three black jurors. After the prosecutor proffered race-neutral reasons for striking three of the six black prospective jurors, the trial court overruled Veal's objections, on equal protection grounds, to the strikes. On appeal, Veal argues that the trial court failed to perform the third step of the *Batson* analysis because it did not make express findings as to any discriminatory intent by the State. She further argues that the facially neutral explanations given for the strikes by the prosecutor were pretextual.

 While it is preferable for trial courts to make express findings in connection with *Batson* challenges, failure to do so is not necessarily fatal to the court's ruling. *See United States v. Jenkins,* 52 F.3d 743, 746–47 (8th Cir.1995) (concluding that even though trial court made no express findings regarding credibility of explanations, it implicitly found those reasons believable); *Perez,* 35 F.3d at 636–37 (determining that lack of express findings was not grounds for reversal). We believe that in this case, the trial court impliedly found the prosecution's explanation credible when it overruled Veal's objections.

 Moreover, there is nothing in the record to indicate that the State's peremptory strikes of the three black prospective jurors were exercised in a discriminatory manner. The prosecutor struck one of the black jurors because she showed no interest in the case or other community events. We note

that the prosecutor struck white prospective jurors who displayed a similar attitude. Lack of interest is a legitimate reason for a peremptory challenge, especially in a long and complex trial. *Jenkins,* 52 F.3d at 747. The second black prospective juror was struck, as was a white prospective juror, because he expressed the view that Veal could not receive a fair trial. He also stated that he had referred persons to Veal's attorney when they had problems. The third black prospective juror was struck because she failed to disclose, even though asked by the prosecutor, that her husband had been prosecuted twice and sent to prison once by the county attorney's office. Concern that a juror may be partial, or hostile, to one party surely lies within the scope of permissible reasons for peremptory strikes.

We find no constitutional violation here.

*D. Rulings on evidentiary matters and closing arguments.* Defendant Veal challenges the trial court's rulings on a number of evidentiary matters and on the scope of her closing argument. We generally review such matters for abuse of discretion. *See Hubka,* 480 N.W.2d at 868 (evidentiary matters); *Kester,* 326 N.W.2d at 281 (scope of closing arguments).

 1. Under Iowa Rule of Evidence 609(d), evidence of juvenile adjudications generally is not admissible at trial. The trial court therefore refused to allow Veal to impeach three witnesses, Tequisha Parsons, Leighton Manning, and Quovadis Marshall, with evidence of juvenile adjudications for third-degree theft and burglary. Because Veal asserts the court's ruling violated her constitutional right to confront witnesses, we review this claim de novo. *See Finnel,* 515 N.W.2d at 43.

 Restrictions on cross-examination run afoul of the Confrontation Clause of the Sixth Amendment of the United States Constitution if the prohibited questioning would have given a reasonable jury a significantly different impression of the witness' credibility. *United States v. Diaz,* 26 F.3d 1533, 1539–40 (11th Cir.1994). Under that test, we do not believe the trial court erred in prohibiting cross-examination on the subject of the

juvenile adjudications. Veal engaged in extensive impeachment of Parsons on the basis of other evidence and used the impeachment evidence in closing argument. Jurors would not have received a significantly different impression of Parsons' credibility if evidence of her juvenile record had been admitted. Similarly, evidence of Manning's adult felony conviction was admitted, so that knowledge of his juvenile record would not have given jurors a significantly different impression of his credibility. Marshall did not testify to any disputed matters; impeachment of his credibility would have added nothing to Veal's defense.

Precluding cross-examination on the subject of the juvenile records did not violate the Confrontation Clause.

2. Veal also argues that the trial court abused its discretion in excluding the evidence of the witnesses' juvenile adjudications. The trial court may, in a criminal case, admit evidence of juvenile adjudications if it is satisfied such evidence is necessary for a fair determination of the defendant's guilt or innocence. Iowa R. Evid. 609(d). As noted in subdivision III–D–1 above, admission of such evidence would have added nothing to Veal's defense. We find no abuse of discretion in relation to this issue.

3. Defendant Veal contends that the following pretrial statements by Veal to various persons should have been admitted into evidence at trial. While Veal was at the Cedar Rapids home of Elizabeth Richardson on June 17, a television newscast reported the murder of Haynes in Waterloo and the use of her credit cards by a group of young people in Iowa City. Richardson testified in a deposition that when she asked Veal what was going on, Veal responded that she "did not know that they were going to kill that old lady" and that people had given her some things to get rid of. When Veal was arrested, she asked who she was supposed to have murdered; after police responded to her question, she said that she knew the victim, had been to her house to use the phone, and couldn't murder anyone.

The trial court sustained the State's motion in limine with regard to those statements. Defendant Veal made offers of proof concerning the statements, and the trial court sustained the State's objections to defendant's offers. Veal argues, under a number of evidentiary rules, that witnesses should have been allowed to testify about her out-of-court statements. To the extent that Veal raises a constitutional challenge, our review is de novo. *Finnel,* 515 N.W.2d at 43.

■ a. Defendant Veal points out that a hearsay statement may be admissible as an excited utterance under Iowa Rule of Evidence 803(2). However, the statement must relate "to a startling event or condition made while the declarant was under the stress of excitement *caused by the event or condition.*" Iowa R. Evid. 803(2) (emphasis added). In this case, Veal's statements were related to the murder, not to what she points to as startling events—Richardson's questions or the arrest. Furthermore, Veal's statements were not spontaneous, as required for the excited utterance exception. *See State v. Watts,* 441 N.W.2d 395, 398 (Iowa App.1989). The statements also were made approximately one and a half days after the murder.

■ b. Veal claims that her statements are admissible as admissions by a party-opponent under Iowa Rule of Evidence 801(d)(2)(A). We reject this argument; such statements are admissible only when offered *against* the party who made the statements. *See* Iowa R. Evid. 801(d)(2). Veal made the statements and was offering them into evidence.

■ c. Similarly, we do not accept Veal's argument that because they exposed her to criminal liability, Veal's statements are admissible under Iowa Rule of Evidence 804(b)(3) as statements against interest. We do not believe that statements admitting to a lesser offense are against interest when offered to defend against a more serious criminal charge. *See United States v. Evans,* 635 F.2d 1124, 1125 (4th Cir.1980). In addition, Veal's statements lack the corroborating circumstances required by Iowa Rule of Evidence 804(b)(3).

■ d. There was testimony at trial that Veal and Parsons left Richardson's house after the newscast reporting Haynes'

murder. Veal contends that because her statements to Richardson were not admitted into evidence, the jury was led to infer that Veal fled Richardson's house because of the television news report. We disagree. We can find no evidence in the record that would lead to such an inference. There was no testimony before the jury concerning the conversation between Veal and Richardson, nor was there any indication that Veal heard the news report. We find no merit in Veal's argument on this point.

■ e. Finally, Veal contends that the trial court's prohibition of her statements denied her right to present a defense and therefore violated her right to due process, presumably under the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 9 and 10 of the Iowa Constitution. In *State v. Traywick*, 468 N.W.2d 452, 455 (Iowa 1991), we noted that such an argument conceivably could implicate all rulings at the trial. Rules of evidence are formulated for the very purpose of assuring fair trials; we believe that subjecting all evidentiary rulings to the augmented standard for due process claims would blur the careful distinctions inherent in those rules. Thus, we concluded in *Traywick* that "[a]n allegedly erroneous ruling ... must go to the heart of the case in order to be considered of such magnitude as to implicate the due process clause." *Traywick*, 468 N.W.2d at 455. Here, because a reasonable jury could not have reached a different verdict based on the statements Veal sought to introduce, the ruling excluding the statements does not achieve that status.

We find no abuse of discretion or constitutional error in the trial court's rulings on the State's motion in limine or Veal's offer of proof.

■ 4. In his opening statement, the prosecutor referred to the fact that Richardson saw the television newscast on June 17 about Haynes' murder and wanted Veal and Parsons out of her house. He also stated that there was no evidence that anyone besides Veal was in Haynes' house at the time in question. Defendant Veal claims that the prosecutor opened the door to Veal's use of her statements, described in subdivision III-

D–3 above, in defendant's opening statement. Thus, she argues that the trial court erred in restricting defense counsel's opening statement concerning statements Veal supposedly had made to Richardson and the police.

We do not believe the prosecutor's remarks opened the door in the manner Veal suggests. The prosecutor did not refer to statements made by either Richardson or Veal, nor did he stray into inadmissible evidence when he argued that no one else was in Haynes' house. There was no abuse of discretion in connection with this issue.

■ 5. At trial, a police officer improperly testified for the State that on June 25, while police investigators were executing a search warrant on Veal to take cast impressions of her fingers, Veal asked to contact her attorney. *See State v. Kyseth*, 240 N.W.2d 671, 674 (Iowa 1976). The trial court sustained Veal's objection to the testimony and directed the jury to disregard the officer's statement. The court denied Veal's later motion for a mistrial based on the officer's improper testimony. On appeal, Veal argues that the officer's testimony was prejudicial and violated her rights under the Sixth and Fourteenth Amendments of the United States Constitution and article I, section 9 of the Iowa Constitution. Because a constitutional right is involved, we review the issue de novo to determine whether the trial court abused its discretion. *Finnel*, 515 N.W.2d at 43; *State v. Wade*, 467 N.W.2d 283, 285 (Iowa 1991).

In assessing whether a mistrial is necessary, we have stated:

> [g]enerally, trial court's quick action in striking the improper response and cautioning the jury to disregard it, coupled, when necessary, with some type of general cautionary instruction, will prevent any prejudice. A defendant who asserts these actions were insufficient bears the heavy burden of demonstrating a clear abuse of discretion on the part of trial court.

*Wade*, 467 N.W.2d at 285 (quoting *State v. Brown*, 397 N.W.2d 689, 699 (Iowa 1986)). Here, after the officer gave the improper response, the trial court warned the jury not to consider the statement. When the court

instructed the jury at the close of the evidence, it again cautioned the jury not to consider testimony it had been told to disregard. We believe the court's action was sufficient to prevent prejudice to Veal; upon our de novo review, we find no abuse of discretion in the court's refusal to declare a mistrial.

6. In preparation for trial, defendant Veal filed a motion to produce requesting all information encompassed by *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). The *Brady* rule includes evidence which may be used to impeach a witness' credibility. *Romeo,* 542 N.W.2d at 551. The district court sustained Veal's motion with regard to the requested *Brady* material. Shortly after the trial began, the State learned that its witness, Tequisha Parsons, had earlier lied to police and in her deposition about her name, age, background, and the timing of Veal's alleged confession to Parsons. However, the State failed to provide this information to Veal until Parsons testified at trial.

Veal moved to exclude Parsons' testimony. The trial court overruled the motion but granted Veal a one-day continuance in order to re-depose Parsons and other witnesses. Veal argues on appeal that the prosecution suppressed the information about Parsons' false statements and thus that the court's ruling deprived her of her right, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and article I, sections 9 and 10 of the Iowa Constitution, to due process and a fair trial. We review this constitutional issue de novo. *Id.*

To establish a *Brady* violation, a defendant must prove: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt. *Id.; Cornell v. State,* 430 N.W.2d 384, 385 (Iowa 1988). We focus on the first and third prongs of this test.

The State argues that defendant Veal has not proven the first element—that the prosecution suppressed evidence in this case—because Veal was able to use the evidence effectively at trial. Evidence is not considered "suppressed" if the defense is able to take advantage of it at trial. *Cornell,* 430 N.W.2d at 385. We agree that Veal was able to employ the information to her advantage. Because the undisclosed information related to Parsons' credibility, it was valuable impeachment evidence. The record shows that Veal used the material extensively for impeachment purposes at trial. Parsons' statements, however, revealed no inconsistencies on substantive matters regarding Veal's guilt or innocence, so Veal's lack of earlier access to the information did not impede the development of her trial defense.

Even if the information were "suppressed" under *Brady,* Veal fails to satisfy the third element of the test for a *Brady* violation. Evidence is material when there is a "reasonable probability" that disclosure would have changed the result of the proceeding. *Romeo,* 542 N.W.2d at 551. A defendant can establish a reasonable probability of a different result by showing the suppression "undermines confidence in the outcome of the trial." *Id.* (quoting *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490, 506 (1995) and *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481, 491 (1985)). Because the inconsistencies in Parsons' statements did not involve substantive evidence concerning Veal's guilt or innocence, and Veal was able to make full use of the statements to impeach Parsons' credibility, Veal has not shown a reasonable probability that earlier disclosure of the information would have led to a different result. We conclude that the State's failure to earlier disclose the information did not constitute a *Brady* violation.

Finding no constitutional violation, we next determine whether the trial court abused its discretion by granting a continuance to Veal rather than prohibiting Parsons' testimony. When a party fails to comply with a discovery order, the court may

"order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing any evidence not disclosed, or it may enter such other order as it deems just under the circumstances." Iowa R.Crim. P. 13(6)(c). In choosing a sanction, the trial court must consider: "(1) the circumstances surrounding the violation; (2) the prejudice, if any, resulting from the violation; (3) the feasibility of curing any prejudice; and (4) any other relevant consideration." *Brown,* 397 N.W.2d at 698.

In this case, the violation involved impeachment evidence rather than evidence directly bearing on Veal's innocence or guilt, so the risk of prejudice to Veal was not significant. Granting a continuance allowed Veal to re-depose Parsons and other witnesses so that Veal could profit fully from the impeachment value of the evidence. Thus, we do not believe the trial court abused its discretion in refusing to preclude Parsons' testimony.

Our conclusion that Parsons' testimony was not improperly admitted does not signify our endorsement of the prosecution's handling of this matter. We condemn, in the strongest possible terms, the State's failure to earlier disclose to defendant the information regarding the inaccuracies in Parsons' statements. Rather, we base our resolution of this issue on our belief that Parsons was thoroughly impeached by Veal's counsel, so that the jury was able to properly evaluate Parsons' testimony regarding substantive matters.

We find no error here.

■■■ 7. The trial court limited defendant Veal's cross-examination of Parsons and a police officer. In addition to various other matters, Veal sought to question Parsons about the fact that Parsons and Tarik Tate were the parents of a child. Veal also tried to question the police officer about his pre-testimony consultations with the prosecutor. Veal claims the trial court abused its discretion in precluding such cross-examination.

■■■ In order to assure the defendant's right to cross-examine witnesses, the trial court should not exercise its discretion in such a way as "to exclude matters vital and proper to the defense of one accused." *State*

*v. Damme,* 522 N.W.2d 321, 324–25 (Iowa App.1994). We do not believe the testimony Veal sought to elicit before the jury fairly can be characterized as "vital and proper" to her defense. Veal does not specify, and we do not discern, how testimony about Parsons' baby would be relevant. *See* Iowa R. Evid. 402. In addition, such testimony could be considered unfairly prejudicial. *See id.* 403. The testimony about any consultation between the police officer and the prosecutor was irrelevant and could mislead the jury to infer that the consultation was improper.

We do not believe the trial court abused its discretion in restricting Veal's cross-examination of Parsons and the police officer.

■■■ 8. In her closing argument, defendant Veal argued about remarks made by the prosecutor in his opening statement and about the State's failure to earlier disclose the inconsistencies in Parsons' statements. Veal contends the trial court abused its discretion in sustaining the State's objections to these arguments.

■■■ Closing arguments serve to aid the jury in analyzing the evidence. *Melk,* 543 N.W.2d at 301. In exercising its discretion with regard to closing arguments, the trial court should allow counsel latitude to the extent that comments and arguments are related to the legal issues and the evidence. *Id.*

In this case, Veal's arguments deviated from the evidence and permissible inferences to be drawn therefrom. Without unduly extending this opinion, we do not believe the trial court's rulings exceeded the scope of its discretion.

**E.** *Jury instructions.* Defendant Veal challenges the trial court's failure to give three proposed jury instructions requested by Veal. She also claims the court erred in giving a jury instruction concerning her other wrongful acts. We review for abuse of discretion. *Webb,* 516 N.W.2d at 831. Reversal is warranted only if an error is prejudicial. *Id.*

■■■ 1. Veal requested three instructions in connection with Parsons' prior false statements to the police and in her deposi-

tion. She argues that the court must instruct fully on all material issues, *State v. Miller*, 359 N.W.2d 508, 512 (Iowa App.1984), and that the court's general instructions were insufficient with regard to Parsons' false statements. However, the trial court gave other instructions concerning Parsons' credibility and her inconsistent statements. "A trial court is ... not required to instruct in the language of requested instructions so long as the topic is covered." *State v. Bolinger*, 460 N.W.2d 877, 880 (Iowa App.1990). We believe the trial court did not abuse its discretion in refusing to give the three instructions requested by Veal.

■■■ 2. Based on the conclusion that defendant Veal's use of Haynes' car and credit cards should be categorized as "other crimes, wrongs, or acts" under Iowa Rule of Evidence 404(b), the trial court instructed the jury that it could consider such acts only if they "were committed in the same or similar manner as the crime charged" and only "for the purpose of establishing motive, intent, absence of mistake or accident, common scheme or identity of a person charged."

■■■ Without determining whether the court erred in giving that instruction, we conclude that any error did not result in prejudice to Veal. Evidence immediately surrounding an offense is admissible in order "to show the complete story of the crime" even when it shows the commission of another crime. *Walters*, 426 N.W.2d at 140–41. Thus, the court's instruction actually narrowed the jury's use of the evidence and favored Veal. There is no error here.

■■■ F. *Trial by a fair tribunal.* After the trial ended, the presiding judge (Judge Bauch) went out for a drink at a bar where the prosecutors and investigators happened to be present. The judge spoke briefly with the prosecutors and investigators about the trial. In connection with her motion for new trial alleging several errors, Veal asked Judge Bauch to recuse himself from further proceedings. The judge did so. Judge Curnan was appointed to proceed with the case. Judge Curnan reviewed a transcript of the trial, heard arguments, and ruled on Veal's motion for new trial.

Defendant Veal now argues that the court (Judge Bauch) exhibited partiality toward the State and asserts that various discretionary rulings were questionable, especially in light of the judge's post-trial social contact and conversation with the prosecution. Therefore, according to Veal, she was denied her right to a trial by a fair tribunal under the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 9 of the Iowa Constitution. Because this claim implicates constitutional rights, our review is de novo. *Romeo*, 542 N.W.2d at 551.

Veal points to three specific issues in connection with her claim of partiality: (1) the trial court's ruling on Veal's motion for change of venue; (2) the court's allowance of Parsons' testimony; and (3) the court's refusal to allow witnesses to testify about Veal's statements to Richardson and police officers. We have fully considered these issues in connection with subdivisions B, D–3, D–4, and D–6 above and have found no error.

In addition, we do not agree with Veal's assertion that the trial court gave more deference and assistance to the State throughout the trial. Our careful review of the record does not reveal the partiality Veal claims. We also note that in recusing himself, the trial judge stated that he did "not bear the slightest modicum of extra judicial bias or prejudice against the defendant" but acted out of concern for any appearance of impropriety.

We strongly disapprove of Judge Bauch's post-trial contact with the prosecutors and investigators. We have emphasized "that judges have a special public responsibility as judicial officers." *In re Inquiry Concerning Eads*, 362 N.W.2d 541, 551 (Iowa 1985). Preserving public confidence in the judiciary requires judges to avoid the sort of meeting that took place after the verdict in this case. Nevertheless, our review convinces us that the court conducted the trial in an impartial manner.

G. *Cumulative errors.* Defendant Veal's final contention is that the cumulative effect of the alleged errors was so prejudicial to her that she was denied a fair trial. Because we have found no errors in connection with the

other issues raised by Veal, we reject this claim.

IV. *Disposition.* We affirm the judgment of the district court finding Veal guilty of first-degree murder as charged.

**AFFIRMED.**