# IN THE COURT OF APPEALS OF IOWA

No. 18-1935
Filed October 7, 2020

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**SHAUROME TAYLOR,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

 Shaurome Taylor appeals his conviction for delivery of methamphetamine to a minor and sexual abuse in the third degree. **AFFIRMED.**

 Joel E. Fenton of Law Offices of Joel E. Fenton, PLC, Des Moines, for appellant.

 Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

 Considered by Mullins, P.J., Schumacher, J., and Vogel, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VOGEL, Senior Judge.**

Shaurome Taylor was convicted of delivery of methamphetamine to a minor and sexual abuse in the third degree in regard to his actions with a thirteen-year-old girl, M.W. He filed a motion for new trial arguing the State engaged in purposeful racial discrimination when it used a peremptory strike to remove a juror and the weight of the evidence does not support his conviction. After the district court denied the motion, it sentenced Taylor to indeterminate terms of incarceration not to exceed ninety-nine years for delivery of methamphetamine and ten years for sexual abuse, run consecutively, plus fines and surcharges. He appeals.

### I. Standard of Review

We review a claim of racial discrimination in the use of a peremptory strike de novo. *State v. Veal*, 930 N.W.2d 319, 327 (Iowa 2019). We review the denial of a motion for new trial on weight-of-the-evidence grounds for abuse of discretion. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).

### II. Peremptory Strike

Counsel at trial may not engage "in purposeful racial discrimination" when using a peremptory strike to remove a juror. *State v. Mootz*, 808 N.W.2d 207, 215 (Iowa 2012) (citing *Batson v. Kentucky*, 476 U.S. 79, 100 (1986)).

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 767 (1995)). We give "a great deal of deference to the district court's evaluation of credibility when determining the true motives of the attorney when making strikes." *Id.* at 214. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* at 219 (quoting *Purkett*, 514 U.S. at 768).

During jury selection, Juror No. 23[1] asked to be excused due to a "physical disability." After questioning the juror in private, the State asked to excuse her for cause, which the district court denied. The State later used a peremptory strike to remove Juror No. 23 from the pool. When Taylor challenged the peremptory strike, the State offered multiple justifications for striking Juror No. 23: (1) she said she has a brain tumor, which she described as a "distracting" condition that caused her "to stop pursuing employment, her career, because it was too much a burden to continue with schooling"; (2) she "made statements that she is familiar with the defendant's family"; (3) she "made a statement that people these days are exaggerating sex crimes," which "would show that she cannot be fair to the State" on the sexual-abuse charge; and (4) "she does have a prior Theft in the Fifth Degree conviction as well, which is a crime of dishonesty and could . . . affect . . . her ability to be fair and impartial." The court found that, even assuming Taylor made the required prima facie showing of racial discrimination, "the State has been able to articulate a clear and reasonable, specific, race-neutral explanation for

---

[1] In an apparent typographical error, Taylor refers to this juror as No. 26 in his brief. During trial, Taylor's counsel identified Jurors No. 23 and 26 as the two potential African-American jurors in the pool. The State used a peremptory strike on Juror No. 23, prompting Taylor's *Batson* challenge. Juror No. 26 remained in the pool and served on the jury.

exercising their peremptory strike in this case and therefore the defendant's motion is denied."

Assuming Taylor "made out a prima facie case of racial discrimination," the State provided a facially valid reason for striking Juror No. 23. *See id.* at 215 ("Unless a discriminatory intent is inherent in the [attorney's] explanation, the reason offered will be deemed race neutral." (alteration in original)). The final step is to "decide whether to believe the [attorney's] explanation for the peremptory challenges." *Id.* at 219 (alteration in original) (quoting *State v. Veal*, 564 N.W.2d 797, 807 (Iowa 1997)). Juror No. 23's medical issues are especially noteworthy, which she described in private questioning:

> I have a brain tumor and my head, if I get upset, it switches all the time and I don't know if I will be able to sit through it or not, you know. I mean, I just don't know because it just feels like something is swishing in my head at all times. Okay? And I'll be—I'm tired right now and I got off work—I got on a disability. So I can probably do it, but I don't know how my—this water or whatever is going on in my brain. I don't know what's going on with that.

When specifically asked if she can pay attention to trial for several hours each day, she answered, "I don't know. Maybe." While the district court denied the State's motion to strike Juror No. 23 due to her medical issues, the reason for the peremptory strike "need not rise to the level justifying exercise of a challenge for cause" to satisfy *Batson*. *State v. Griffin*, 564 N.W.2d 370, 375 (Iowa 1997) (quoting *Batson*, 476 U.S. at 97). Furthermore, the State pointed to more than her medical issues in justifying its peremptory strike.

Taylor faults the district court for not performing "an inquiry that encompasses the totality of jury selection and articulates why the entire process has or has not been race-neutral." The district court is not required to perform

such a detailed analysis. *See Mootz*, 808 N.W.2d at 217 ("[I]t is preferable for trial courts to make express findings in connection with *Batson* challenges, [but a] failure to do so is not necessarily fatal to the court's ruling." (second alteration in original) (quoting *Veal*, 564 N.W.2d at 807)). The court's *Batson* analysis at trial is brief but sufficient for our review. *See id.* at 219–20 ("In the absence of express findings, we are allowed to review the implied findings of the trial court regarding the attorney's credibility and [the] asserted reasons for the strike."). Considering Juror No. 23's medical condition and other issues the State raised at trial, plus the district court impliedly finding the State's explanation credible, we agree with the district court that Taylor failed to prove the State engaged in purposeful racial discrimination in striking Juror No. 23.

### III. Weight of the Evidence

Taylor challenges the weight of the evidence supporting his conviction for both delivery of methamphetamine to a minor[2] and sexual abuse in the third

---

[2] The jury instructions set forth the elements the State must prove to convict Taylor of delivery of methamphetamine to a minor:

> 1. On or about the 29th day of February, 2016, the defendant delivered a material, compound, mixture, preparation, or substance that contained any detectable amount of methamphetamine to [M.W.].
> 2. At the time the defendant delivered the material, compound, mixture, preparation or substance, he knew it was methamphetamine.
> 3. The defendant was 18 years or older at the time he delivered the material, compound, mixture, preparation, or substance.
> 4. [M.W.] was under 18 years old at the time the defendant delivered the material, compound, mixture, preparation, or substance.

degree.[3]  *See* Iowa Code §§ 124.401D, 709.4 (2016).  "The weight-of-the-evidence standard requires the district court to consider whether more 'credible evidence' supports the verdict rendered than supports the alternative verdict."  *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).  When considering the weight of the evidence, the court may "grant a motion for new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered."  *Id.*  "The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether 'a greater amount of credible evidence' suggests the verdict rendered was a miscarriage of justice."  *Id.* (citation omitted).  "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence."  *Reeves*, 670 N.W.2d at 203 (clarifying appellate court does not sit to judge witness credibility or reweigh evidence).

According to M.W.'s testimony, in February 2016 she was thirteen years old and lived near Taylor.  On or about February 29, she entered Taylor's home, where Taylor placed a white powder on a mirror and the two of them snorted the powder.  She went back and forth between her home and Taylor's home several times that

---

[3] The jury instructions set forth the elements the State must prove to convict Taylor of sexual abuse in the third degree:

> 1. On or about the 29th day of February, 2016, the defendant performed a sex act with [M.W.].
> 2. The defendant performed the sex act while [M.W.] was under the age of 14 years.
> 3. The defendant and [M.W.] were not then living together as husband and wife.

A "sex act" includes "[p]enetration of the penis into the vagina" and "[c]ontact between the mouth and genitalia."  Iowa Code § 702.17(1), (2).

day and into the next day, snorting the white powder off the mirror each time she returned to Taylor's home.  After snorting the powder, she "felt crazy" and "angry."  At one point, she entered Taylor's bedroom and watched Taylor and his paramour having vaginal intercourse.  M.W. then disrobed, and Taylor performed oral sex on her and then inserted his penis into her vagina.

Taylor raises several pieces of evidence he claims cast doubt on M.W.'s credibility.  M.W. made inconsistent statements between her testimony at trial and earlier interviews, including her description of the drug Taylor provided and whether Taylor used a condom and lubricant during the sexual contact.  M.W. also has an admitted history of drug use and delinquency.  Further, the fact that M.W.'s mother was romantically involved with Taylor in the past also raises questions about the family's credibility.  Taylor also asserts that contrary to M.W.'s testimony, the police found no methamphetamine or drug paraphernalia inside Taylor's home, and investigators found no DNA or other physical evidence to confirm that he had sexual contact with M.W.[4]

However, the State presented considerable evidence to support M.W.'s testimony including: (1) security video showing M.W. entering and leaving Taylor's home several times during the time in question; (2) recordings and testimony from

---

[4] The State argues Taylor failed to preserve error on his arguments related to M.W.'s mother and the lack of physical evidence.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").  Taylor's written motion for new trial does not explicitly mention M.W.'s mother or physical evidence.  However, the district court in its written denial found Taylor "generally incorporated the arguments made previously on the record during trial" in addition to those specified in his motion.  Because the court read and denied his motion broadly to encompass the trial, we find his entire weight-of-the-evidence argument preserved for appeal.

police officers about M.W.'s interviews during the investigation, such as statements by M.W. to the Child Protection Center interviewer that M.W. ingested drugs and had sex with Taylor; (3) text messages between Taylor and his paramour regarding Taylor's sexual activity with M.W. and his supplying her with drugs; (4) a toxicology analysis from February 29 showing M.W. had drugs in her system, including methamphetamine, amphetamine, and THC; and (5) testimony from the paramour confirming the presence of drugs in Taylor's residence, acknowledging that the paramour injected methamphetamine in front of M.W. during this time, and describing Taylor's use of methamphetamine by snorting it off a mirror.

Even considering Taylor's assertions that the weight of the evidence did not support his convictions, the evidence in the record generally corroborates M.W.'s testimony and the State's evidence that Taylor delivered methamphetamine to her and committed sexual abuse in the third degree. Therefore, because the evidence did not support "the alternative verdict as opposed to the verdict rendered," *Ary*, 877 N.W.2d at 706, we find no abuse of discretion in the district court's denial of Taylor's motion for a new trial. We affirm his convictions.

**AFFIRMED.**