# IN THE COURT OF APPEALS OF IOWA

No. 23-1778
Filed April 9, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RUDY SINGH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Bethany Currie,

Judge.


        A defendant appeals his convictions, arguing several improper statements

warrant a new trial and insufficient evidence supports his child-endangerment

convictions.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg,

Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney

General, for appellee.


        Considered without oral argument by Tabor, C.J., Buller, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**VOGEL, Senior Judge.**

Rudy Singh was convicted by a jury of two counts of second-degree sexual abuse, four counts of child endangerment, and one count of domestic abuse assault causing bodily injury. He now appeals those convictions, arguing (1) he is entitled to a new trial based on several allegedly improper statements, and (2) insufficient evidence supports the child-endangerment convictions. Because the district court did not abuse its discretion when denying Singh's mistrial motions and substantial evidence supports his child-endangerment convictions, we affirm.

## I.   Factual Background and Proceedings.

Singh began sexually abusing his daughter—engaging in vaginal and oral sexual abuse—when she was seven years old. According to the daughter, the abuse continued "most every night," except for the evenings when her mother did not work a night shift. Singh's abuse continued until she was twelve, when she confided in her grandfather and mother, who confronted Singh. Yet the family did not immediately report Singh to law enforcement, and the daughter recalled her paternal grandmother telling her that if she told anyone, "you know what would happen to him."

Singh and the mother started fighting more often, with some fights turning physical. The daughter recalled one evening when the two returned home and the mother was drunk. She described Singh "dragging [the mother] in the house" and the mother trying to shove him. Singh then "hit" the mother "in the face" and "kneed her in the chest." In response, the family's dog, who was otherwise gentle, bit Singh. The daughter was in the room while this occurred, as were her three younger brothers.

The daughter later reported her father's abuse to the Iowa Department of Health and Human Services. She participated in a forensic interview and the Department referred the case to local law enforcement. Based on the sexual abuse and domestic-violence allegations, Singh was charged with two counts of second-degree sexual abuse, Class "B" forcible felonies; four counts of child endangerment, serious misdemeanors; and one count of domestic abuse assault, a serious misdemeanor. After a four-day trial, the jury found Singh guilty on all counts. He was sentenced to two consecutive terms of imprisonment not to exceed twenty-five years for the sexual-abuse convictions, four concurrent two-year terms of imprisonment for the child-endangerment convictions, and a one-year term of imprisonment for the domestic-abuse conviction, which also ran concurrent to the child-endangerment sentences. Singh now appeals.

## II. Motions for Mistrial.

Singh first argues that four statements made during the trial were sufficiently prejudicial to have warranted a mistrial. District courts have "considerable discretion in ruling upon motions for mistrial, since they are present throughout the trial and are in a better position than the reviewing court to gauge the effect of the matter in question on the jury." *State v. Brown*, 5 N.W.3d 611, 615 (Iowa 2024) (citation omitted). We therefore review denials of mistrial motions for abuse of discretion and will not interfere with the court's informed judgment unless "there is no support in the record for the trial court's determination." *Id.* (citation omitted). We consider each statement in turn.

**A. "To hopefully send Rudy to prison."**

During the daughter's testimony, the prosecutor asked her, "why are you here today?" The daughter replied, "To hopefully send Rudy to prison." Defense counsel immediately moved for a mistrial, arguing "punishment is not something for the jury to decide." The statement breached an in-limine ruling, which excluded all statements "relating to the criminal penalties upon conviction." The district court denied the mistrial motion, finding "one passing mention by a sixteen-year-old does not necessarily indicate to the jurors what's going to happen." Instead, the court gave a curative instruction, which was repeated in the final instructions, reminding the jury that its job was "to determine if Mr. Singh is guilty or not guilty. In the event of a guilty verdict, you will have nothing to do with punishment."[1]

When testimony violates an in-limine ruling, "but the district court promptly strikes the evidence and admonishes the jury to disregard it, a mistrial may be granted only when the forbidden evidence is so prejudicial that its effect on the jury could not be erased by the district court's admonition." *State v. Kieffer*, __ N.W.3d __, 2025 WL 568668, at *5 (Iowa Feb. 21, 2025). Following quick action by the district court to remedy an overstep, the defendant "bears the heavy burden of demonstrating a clear abuse of discretion on the part of trial court." *State v. Brown*, 397 N.W.2d 689, 699 (Iowa 1986). Singh has not cleared that high bar. The

---

[1] Later in the trial, the daughter's forensic interview was played for the jury. Intending to skip over one comment, the State unintentionally hit pause too late and the jury heard the daughter say she worried her brothers would "think that I was a bad person because I put my dad in prison." Defense counsel noted the reference to "prison" and appeared to request a mistrial, stating "I'm not asking for any additional remedy beyond the one I've been denied." Because counsel did not request curative instructions, none were given.

daughter's reference to wanting to see her father punished—specifically, wanting to see him in prison—did not indelibly taint the proceeding. The statement came after the daughter emotionally recounted her father's abuse and detailed violence between her parents. The court's instruction remedied any potential misuse of the statement by clarifying the jury plays no role in fashioning Singh's sentence, should it find him guilty. Thus, the court did not abuse its discretion in denying a mistrial.

### B. "[The daughter] was very forthcoming talking with the forensic interviewer."

During trial, a law enforcement officer testified about his investigation into Singh, including his review of the daughter's forensic interview. The prosecutor asked, "If you can recall, can you tell us about [the daughter's]—observations you made of [the daughter's] demeanor during this interview?" The officer responded, "When I was watching the interview, [the daughter] was very forthcoming talking with the forensic interviewer." Defense counsel objected and moved for a mistrial, arguing the statement improperly vouched for the daughter's credibility. The court sustained counsel's objection, denied the mistrial motion, and instructed the jury "Only you, the jury, get to decide any witness's credibility."

We again find no abuse of discretion in denying the mistrial motion. To begin, credibility determinations are reserved for the jury, and we police testimony that "directly or indirectly comments on the child's credibility." *State v. Jaquez*, 856 N.W.2d 663, 665 (Iowa 2014) (citation omitted). However, not all testimony describing a child's report is vouching. *See State v. Dudley*, 856 N.W.2d 668, 673, 678 (Iowa 2014) (finding statement that a child victim was "consistent throughout

the entire interview process" was not vouching, as it was a factual statement that informed, rather than displaced, the jury's credibility determination).

Out of the presence of the jury, the court discussed both dictionary and case law definitions of the term "forthcoming," which is open to multiple understandings. *See Beek v. State*, No. 20-0704, 2021 WL 5106445, at *3 (Iowa Ct. App. Nov. 3, 2021) (noting "forthcoming" could mean either "characterized by candidness" or "responsive"). Placing the officer's testimony in context, the daughter was indeed responsive in her forensic interview—discussing her father's abuse, her fear of reporting, and other difficult topics. Yet even if the jury initially understood "forthcoming" to confirm the daughter's candor, the court sustained counsel's objection and promptly reminded the jury that "only you" decide a witness's credibility. The jury also watched the daughter's interview and thus could itself measure her interview against her testimony and decide how responsive, consistent, and, ultimately, credible, she was. Under these facts, the court dispelled any potential prejudice with its instruction and did not abuse its discretion when denying the mistrial motion.

### C. "Did Mr. Singh ever provide you or volunteer any records to show, 'Hey, I was working'"?

During cross-examination of the investigating officer, defense counsel probed the scope of the investigation, including whether the officer explored if Singh could have been working during some of the alleged events. Counsel asked the officer, "But you didn't check work records, so we don't know when Rudy might have been working during that time period?" The officer responded, "Correct." Counsel continued, "And if he had work records showing that he was working at

that time period, would that be something that would be relevant to your investigation?" The officer replied, "If I had specific dates that these allegations occurred. But you forget that I only had a time period."

During re-direct, the prosecutor asked the officer, "Now, [defense counsel] asked you a lot about work records of Mr. Singh. Did Mr. Singh ever provide you or volunteer any records to show, 'Hey, I was working.'" Before the officer answered, defense counsel objected and moved for a mistrial, arguing the question violated Singh's right to remain silent and improperly shifted the burden of proof away from the State. The court sustained the objection, denied the mistrial motion, and provided a curative instruction: "The State must prove Mr. Singh's guilt beyond a reasonable doubt. Mr. Singh does not have to prove or disprove anything. Mr. Singh has the right to remain silent."

Assuming without deciding that this issue could be characterized as potentially burden-shifting, the prosecutor's question was not so prejudicial as to require a new trial. Understood in context, the prosecutor was responding to defense counsel's line of questioning about whether law enforcement reviewed Singh's work records. If the jury was left wondering whether those work records existed, that door was opened by Singh, not the State. In any event, the jury was quickly admonished that Singh need not say or produce anything. Viewing the question "in the context of the entire trial," *State v. Newell*, 710 N.W.2d 6, 33 (Iowa 2006), the court did not abuse its discretion when denying the motion for mistrial.

### D. "He asked for a lawyer."

Later in the trial, another officer who had interviewed Singh after his arrest testified. The prosecutor asked, "What happened after the defendant agreed to speak with you?" The officer answered, "I asked him some routine questions. When I got to the actual assault incident, he asked for a lawyer, and we stopped." Defense counsel objected and moved for a mistrial, again arguing the statement violated Singh's right to remain silent. After deliberation, the court sustained the objection and informed the jury, "You are directed that the answer that he gave is stricken, and you shall disregard that answer. You're reminded again the State must prove Singh's guilt beyond a reasonable doubt. Mr. Singh does not have to prove or disprove anything. And Mr. Singh has the right to remain silent."

Again, we find the court's sustaining of the objection and curative instruction prevented any prejudice to Singh. *See State v. Veal*, 564 N.W.2d 797, 809–10 (Iowa 1997) (concluding district court's instruction to disregard officer's testimony stating the defendant "asked to contact her attorney" was "sufficient to prevent prejudice" to the defendant). We presume juries follow instructions, *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010), and Singh has not met his "heavy burden" to show the court's action to sustain the objection and admonish the jury to disregard the statement were insufficient, *Brown*, 397 N.W.2d at 699. Thus, the court did not abuse its discretion when denying Singh's mistrial motion.

### E. Cumulative Error.

Finally, Singh argues that even if none of these statements in isolation required a mistrial, the cumulative effect of the statements deprived him of a fair

trial.[2]  However, none of Singh's identified statements rise to the level of prejudice requiring a new trial.  *See State v. Piper*, 663 N.W.2d 894, 917 (Iowa 2003) ("We find no error in the judge's rulings with respect to the various matters raised by the defendant on appeal.  It follows, then, that we also find no merit in [his] contention he was denied a fair trial by the cumulative effect of the court's rulings."), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010).  Instead, across four full days of testimony from the daughter, the mother, several other family members, the forensic interviewer, law enforcement officers, and Singh himself, there were a handful of isolated statements that were quickly remedied by the district court by appropriate instructions to the jury.  Viewing the statements in the context of the entire proceeding, Singh was not deprived of a fair trial.

### III. Substantial Evidence of Child Endangerment.

Singh also contests whether there was sufficient evidence to convict him of child endangerment.  *See* Iowa Code § 726.6(1)(a), 726.6(3), 726.6(7) (2019).  Reviewing for legal error, we will uphold the jury's verdict if substantial evidence supports it.  *State v. Cole*, 3 N.W.3d 200, 203 (Iowa 2024).  "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt.  Evidence raising only suspicion, speculation, or conjecture is not substantial."  *Id.* (cleaned up).  Across the record, we will view the facts "in the light most favorable to the verdict."  *Id.* at 208.

---

[2] The State contests error preservation, arguing cumulative error was never raised to the district court.  However, during trial, defense counsel emphasized the number of mistrial motions, including multiple admonitions about the right to remain silent.  After trial, counsel's new-trial motion raised cumulative error based on some of the statements identified on appeal.  Assuming without deciding that error was preserved, we elect to reach the merits.

As to each of the four children who witnessed the domestic-abuse event, the jury was instructed that the State must prove Singh was the child's parent, the child was under fourteen years old, and Singh "acted with the knowledge that he was creating a substantial risk to [the child's] physical, mental, or emotional health or safety." A "substantial risk" meant "the very real possibility of danger." *See Kieffer*, 2025 WL 568668, at *2 (noting unopposed instructions become law of the case). As for "creating" a risk, "parent-*created* risks are those that arise from parents' illegal or overtly abusive behavior." *Cole*, 3 N.W.3d at 205–06 (collecting cases).

Against that backdrop, substantial evidence supports Singh's convictions. Three of the four children testified at trial, and all agreed they were in the same room, close to the parents, when the parents returned home and began fighting. They also agreed their normally gentle dog was roused to bite Singh during the event. Two of the children had different recollections of who the aggressor was, but we leave it to juries to resolve these discrepancies and decide whose version of events is most credible. *State v. Fetters*, 562 N.W.2d 770, 775 (Iowa Ct. App. 1997). Crediting the mother and daughter's testimonies, the jury could find that Singh hit the mother in the face and kneed her, causing injury and bleeding, while the children were close by in the same room.

Singh insists that, even if evidence shows domestic violence between himself and the mother, "there was no evidence" the children "were in any kind of danger." We disagree. First, the jury need only find a *risk* to the children's physical, mental, or emotional health or safety—proof of actual harm is not required. *See State v. Anspach*, 627 N.W.2d 227, 222–23 (Iowa 2001). Second,

a jury could reasonably believe that watching Singh beat their mother in their presence risks the children's mental and emotional health.  *See United States v. Trice*, 88 F.4th 738, 739–41 (8th Cir. 2023) (finding "witnessing the domestic assault of a parent is an adequate basis for child endangerment" under Iowa law). Thus, substantial evidence supports Singh's child-endangerment convictions.

**AFFIRMED.**