**STATE of Iowa, Appellee,**

v.

**Michael Ron RUNYAN, Appellant.**

**No. 97–2135.**

Court of Appeals of Iowa.

April 30, 1999.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, Mary E. Richards, County Attorney, and Stephen H. Holmes and Angelina Smith, Assistant County Attorneys for appellee.

Heard by HUITINK, P.J., and MAHAN, and ZIMMER, JJ.

ZIMMER, J.

Defendant Michael Ron Runyan appeals his conviction and sentence of first-degree murder in violation of Iowa Code sections 707.1 and 707.2 (1997). He contends the trial court erred in limiting his cross-exam-

ination of former co-defendant and State's witness Luke Abrams regarding the extent of Abrams' plea agreement with the State. We affirm.

On April 20, 1997, youthful revelry took a tragic turn when nineteen-year-old Uri Sellers was fatally stabbed by twenty-year-old Michael Runyan during Iowa State University's annual "Veisha" celebration. The stabbing occurred at approximately 2:30 a.m. outside the Adelante Fraternity house on Welch Avenue in Ames where a party was in progress. Defendant turned himself in to the police a few days later, and on May 5 was formally charged with first-degree murder. Defendant admitted the stabbing but claimed he acted with justification and did not intend to seriously injure the victim. Following trial, a jury found Runyan guilty of first-degree murder as charged.

Prior to defendant's trial, an alleged accomplice, Luke Abrams, was also charged with first-degree murder. Abrams subsequently negotiated a plea agreement with the State. In return for his testimony against Runyan and prior to Runyan's trial, Abrams pled guilty to reduced charges of going armed with intent, a class "D" felony, and accessory after the fact, an aggravated misdemeanor. First-degree murder carries with it life without possibility of parole. The charges to which Abrams pleaded carried a possibility of a maximum seven-year indeterminate term of incarceration (five years for going with intent and two years for accessory after the fact). Abrams was not sentenced until after defendant's trial.

At trial, the jury was informed Abrams had pled guilty to the lesser charges in exchange for his testimony against the defendant. Abrams further testified that although he believed he was not guilty of going armed with intent and accessory after the fact, he pled guilty in order to avoid "taking a chance of getting convicted of life...."

The court, however, refused to allow defendant's attorneys to elicit testimony regarding Abrams' full understanding of the specific penalties applicable to his plea bargain. The defense wanted to use such testimony to demonstrate the magnitude of the difference in the crimes with which Abrams was originally charged and to which he had pleaded guilty. The defense also wanted to present testimony that a sentence of life without parole meant that Abrams would never get out of jail if convicted of first-degree murder. Runyan now appeals.

## I. Limitation of Cross–Examination.
Defendant claims the trial court erred in failing to allow him to explore the full ramifications of the plea agreement and ask penalty-specific questions of Abrams.

*A. Applicable Law.* Four Iowa cases have addressed the issue we face today: to what extent should a trial court permit a defense attorney to question an accomplice-turned-state's-witness (originally charged with the same offense as the defendant) regarding the specifics of a plea agreement the witness received in exchange for testifying against the defendant. *See State v. Sackett,* 499 N.W.2d 312 (Iowa App.1993); *State v. Donelson,* 302 N.W.2d 125 (Iowa 1981); *State v. Horn,* 282 N.W.2d 717 (Iowa 1979); *State v. Armento,* 256 N.W.2d 228 (Iowa 1977).

From these cases, we glean the primary concern for limiting examination into the details of the plea agreement is to prevent the jury from hearing the possible penalties for the same crime with which defendant is charged (and which the witness may avoid by testifying for the state) because penalty issues are not within the province of the jury. It is felt that if a jury is aware of the penalty a defendant may face, the state's case may be prejudiced.

This desire to avoid prejudice, however, must be balanced against the competing constitutional right of cross-examination secured by the Sixth Amendment of the federal constitution and made applicable to the states through the Fourteenth Amend-

ment. *See Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.E.2d 934, 937 (1965) (Sixth Amendment); *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067–68, 13 L.E.2d 923, 926 (1965) (Fourteenth Amendment); *State v. Carney,* 236 N.W.2d 44, 46 (Iowa 1975) (Sixth Amendment).

■■■ The right of a criminal defendant to impeach a witness by showing bias or interest is well established. "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *United States v. Klauer,* 856 F.2d 1147, 1149 (8th Cir.1988). The Iowa Supreme Court has accordingly recognized a "defendant should be permitted wide latitude in seeking to show bias of an alleged accomplice who testifies for the prosecution." *State v. Armento,* 256 N.W.2d at 229. Such latitude is especially important where the accomplice's testimony "may be influenced by a promise of, or hope or expectation of, immunity or leniency with respect to his case as a consideration for testifying against the defendant." *Id.* In *State v. Donelson* the Iowa Supreme Court stated:

> The rule is unquestioned that a defendant may inquire about the concessions the accomplice hopes to receive or has been promised for his testimony, and where the State has gone so far as to enter into a bargain with the accomplice the defendant must be allowed to inquire about the terms of the bargain so that the jury may better understand the possible motivations of the accomplice as he sits on the stand.

*State v. Donelson,* 302 N.W.2d 125, 131 (Iowa 1981).

Thus, this case asks us to strike a balance between the requirements of cross-examination and the desire to prevent undue prejudice. In *State v. Armento,* a trial court prohibited a defendant charged with first-degree murder from eliciting testimony from an accomplice as to the penalty for that crime. Specifically, defendant sought to show the accomplice (who had also been charged with first-degree murder) knew the penalty for first-degree murder was life imprisonment and that the accomplice's motivation in testifying for the State was to avoid this penalty. The Iowa Supreme Court held the trial court should have allowed the defendant to elicit this information, but nonetheless held the error was not reversible. According to the court, the jury would obviously have known "first-degree murder carries a most serious burden." *See State v. Armento,* 256 N.W.2d at 230. Therefore, that they did not actually hear testimony regarding the penalty did not matter because what the accomplice believed the penalty to be would not have materially affected the jury's impression of his motivation in testifying for the State. *Id.* The court noted that while the jury did not hear the specifics of the penalty, they were told through cross-examination of the accomplice that he was aware of the penalty for murder in the first degree and that it was defendant's position—though denied by the accomplice—that the accomplice's awareness of this penalty had led him to color his testimony for the State. *Id.* at 229. The court also noted the witness's role as accomplice was disclosed to the jury and that defendant was allowed to extensively question the accomplice and other witnesses regarding plea negotiations and leniency expectations. *Id.,* at 229.

In *State v. Horn,* the Iowa Supreme Court was presented with a similar factual situation. In that case, however, the trial court did allow testimony regarding the accomplice's belief as to the penalty for first-degree murder. *See State v. Horn,* 282 N.W.2d at 727. The trial court only prevented defendant from questioning the witness about the penalties for lesser-included offenses in an attempt to show the witness may have been testifying in an attempt to receive leniency from the State. *Id.* at 727–28. Essentially, the jury was allowed to hear what the accomplice might avoid by testifying for the State, but was

not allowed to hear what penalty the accomplice might actually receive. The court held that cross-examination was broader than allowed in *State v. Armento,* and that while it would have been within the discretion of the trial court to permit testimony about lesser included offenses, there was no reversible error in not allowing the testimony. *See State v. Horn,* 282 N.W.2d at 728.

Reversible error was found in *State v. Donelson,* however. In that case, defendant wanted to reveal the full facts concerning a plea agreement an accomplice had entered into in exchange for testifying for the State. That agreement reduced the charge against the witness from first-degree sexual abuse, a felony carrying a life imprisonment penalty, to an aggravated misdemeanor carrying a two-year imprisonment penalty plus a $5000 fine. *See State v. Donelson,* 302 N.W.2d at 128–29. The trial court prohibited nearly all questioning of this issue, only permitting defense counsel to show that in exchange for the accomplice's testimony, the State agreed to reduce his charge from a felony to a misdemeanor. *Id.* Defense counsel was not allowed to elicit testimony about the penalties for either offense. In essence, the jury was neither allowed to hear the potential penalty avoided nor the penalty which might actually be received. Nor did the Supreme Court impute to the jury knowledge of the penalty for first-degree sexual abuse as it had with first-degree murder in *Armento.* The court held the trial court committed reversible error in limiting cross examination in this way. According to the court, "the jury should have been allowed to know the substantial *quid pro quo* for [the witness's] testimony: reduction from a charge carrying a mandatory life sentence to a crime carrying confinement for two years and a fine." *Id.* at 130. The court found this knowledge was particularly important in ascertaining the accomplice's motivation for testifying because the accomplice was a cardinal witness against the defendant. *Id.*

Finally, in *State v. Sackett,* the Iowa Court of Appeals held a trial court's restrictions on cross-examination of an accomplice's plea agreement with the State did not constitute reversible error. In that case, the jury was informed the witness and the defendant had both been charged with second-degree sexual abuse, but that in exchange for testifying for the State, the accomplice's charge had been reduced to the aggravated misdemeanor of child endangerment not resulting in serious injury. *See State v. Sackett,* 499 N.W.2d at 313. The jury, however, was not allowed to hear the maximum penalty for the original charge was twenty-five years while the maximum penalty for the plea agreement charge was two years. *Id.* Nevertheless, the court felt that while the jury may not have known the exact details of the applicable penalties, it surely knew "second degree sexual abuse was a most serious charge involving a most severe penalty." *Id.* at 315. Furthermore, the court found it significant that the witness was allowed to tell the jury that she had received a "large benefit" in exchange for testifying for the State. *Id.*

In determining whether the cross-examination in the present case was sufficiently broad, we first address our scope of review. We note the Supreme Court essentially applied a prejudicial error test in *Armento* and *Horn. See State v. Horn,* 282 N.W.2d at 728; *State v. Armento,* 256 N.W.2d at 230. However, while the *Sackett* court essentially applied the same test, it did indicate that to the extent a constitutional error is alleged, our review should be de novo, based on the totality of circumstances.

 Having reviewed a range of state and federal decisions regarding limitation of cross-examination of an accomplice-witness's plea agreement with the prosecution, we determine this case should be reviewed for abuse of discretion and prejudicial error, rather than for constitutional error. The Iowa Supreme Court has held

that when a defendant is denied entirely his right to confrontation, the State must establish the error was harmless beyond a reasonable doubt. *See State v. Kite,* 513 N.W.2d 720, 721 (Iowa 1994) (State was required to show harmless error beyond a reasonable doubt where main witness against defendant was not presented at trial). *Cf. State v. Veal,* 564 N.W.2d 797, 807 (Iowa 1997) (applying constitutional error analysis where trial court prohibited entirely cross-examination of a subject defense counsel sought to use to impeach a witness). In *Delaware v. Van Arsdall,* the Supreme Court recognized a trial court has wide latitude to impose limits on cross-examination, but then applied a constitutional error analysis (rather than an abuse of discretion analysis) upon remarking that in that case the trial court had prohibited all inquiry into the possibility that the witness would be biased as a result of the State's dismissal of his pending public drunkenness charge. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986). In the context of cross-examination regarding an accomplice-witness's plea agreement, where the trial court has prohibited defendant from making any inquiry whatsoever into the matter, review has been for constitutional error subject to harmlessness beyond a reasonable doubt. *See, e.g., Wasko v. Singletary,* 966 F.2d 1377 (11th Cir. 1992).

■ However, where a defendant has been allowed to elicit testimony from the accomplice that he has received a plea agreement in exchange for testifying, but is prohibited from inquiring into the specific penalties the accomplice may have faced without the plea-agreement, it has been held review should be for abuse of discretion. *See United States v. Nelson,* 39 F.3d 705, 707–08 (7th Cir.1994) (citing and quoting *Delaware v. Van Arsdall* for the proposition that once a defendant is allowed to expose a witness' motivation in testifying, such as a plea agreement, it becomes of "peripheral concern to the Sixth Amend-

ment how much opportunity defense counsel gets to hammer that point home to the jury" and therefore, because Sixth Amendment rights are not implicated, review is for abuse of discretion). In the case presently before us, the trial court did not entirely prohibit defense counsel from inquiring into a plea agreement as motivation to testify for the state. Nor has the trial court's ruling been challenged on constitutional grounds. *See State v. Predka,* 555 N.W.2d 202, 204 (Iowa 1996) (constitutional questions are reviewed de novo, based on the totality of the circumstances); *State v. Finnel,* 515 N.W.2d 41, 43 (Iowa 1994) (when defendant asserts a violation of a constitutional right, we review de novo). We therefore determine our review should be for abuse of discretion. *See State v. Hubka,* 480 N.W.2d 867, 868 (Iowa 1992). We will find an abuse of discretion only where the trial court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *See State v. Privitt,* 571 N.W.2d 484, 486 (Iowa 1997). Our primary concern under *Armento, Horn,* and *Sackett* is whether any error by the trial court resulted in prejudice to the defendant.

■ *B. Trial court's ruling does not require reversal.* Defendant argues the jury should have been told Abrams' potential life sentence carried with it no possibility of parole. He further claims the jury should have been told of the exact nature of the lesser sentences Abrams was facing. Defendant claims this information was necessary for the jury to more accurately assess Abrams' motivations for testifying.

The following testimony from Abrams was received at trial:

*Direct Examination*

Q. Now, you through your attorneys made an agreement about your criminal case?

A. Yes.

Q. And what's your understanding of that agreement?

A. That I plead guilty to a accessory after the fact and going armed with intent.

Q. And have you entered guilty pleas to those charges?

A. Yes, I have.

Q. And you're awaiting sentencing?

A. Yeah.

Q. And was part of that agreement that you had to testify here?

A. Yeah.

. . . .

Q. Now, why did you enter guilty pleas?

A. To avoid the chance of getting convicted of first degree murder.

*Cross–Examination*

Q. And you weren't anywhere near the stabbing when it happened; were you?

A. No, I wasn't.

Q. And yet you've indicated that pursuant to the plea agreement you have decided to plead guilty to going armed with intent to inflict injury?

A. No, that—

Q. Isn't that right?

A. I'm not saying that. The plea agreement was an Alford plea.

Q. What does that mean?

A. That I'm not saying that I'm guilty of it. I'm just doing it to avoid taking a chance of getting convicted of life or first degree murder.

. . . .

Q. When did you decide to turn yourself in?

A. As soon as I seen my face on the news.

Q. Did you ever think you would be charged with first degree murder?

A. I didn't think that, no. I mean on the t.v. it said something about that; but I didn't think that, no.

Q. What did you think when you came to court and you were charged with first degree murder after what you had done?

A. I was—I couldn't believe it.

Q. Now, you said part of the plea agreement was that you would testify in this trial; right?

A. Yes.

Q. If the County Attorney believed that he thought you weren't testifying truthfully, would the deal be off?

MR. HOLMES [PROSECUTOR]: Objection. . That calls for speculation.

THE COURT: Overruled. You can answer the question. You may answer the question.

A. What was the question again?

Q. If the County attorney felt that you weren't testifying truthfully,—

A. Yes.

Q.—Would the deal be off? Could he bring the charges of first degree murder again as you understand the agreement?

A. That's what I understood.

Q. So that is still hanging over you head?

A. Yes.

The jury was informed Abrams, who was not a cardinal witness for the State, had struck a deal with the prosecutor. The jury was told Abrams was originally charged with first degree murder, but was instead allowed to plead guilty to accessory after the fact and going armed with intent. The jury was also informed Abrams accepted the deal to avoid the chance of being convicted for first-degree murder and receiving a life term in prison. The jury also knew the original charge of first degree murder would be reinstated if Abrams did not testify truthfully.

While the jury was not specifically told the original charge against Abrams would not include the possibility of parole, the jury had enough evidence before it to realize he faced a potentially severe penalty, i.e. life imprisonment. Furthermore, though the jury was not informed of the specific nature and penalties of the crimes to which Abrams actually pleaded guilty, the jury clearly knew the penalties were

less than life imprisonment. Additionally, they were aware Abrams had not been sentenced and that the original charges against him could be reinstated if the prosecution believed he had testified falsely. Clearly, the jury had enough before it to identify any bias or motive Abrams may have had. The jury was clearly aware Abrams received a "large benefit" in exchange for his testimony. *See State v. Sackett*, 499 N.W.2d at 313. Any additional information regarding the crimes or penalties involved would not have significantly affected the jury's impression of Abrams' motivation for pleading guilty to a reduced charge in exchange for testifying for the State. *See State v. Armento*, 256 N.W.2d at 230.

The rule allowing liberal latitude in the cross-examination of an accomplice with respect to his motive for testifying cannot be understated, particularly when that testimony may be influenced by a promise of or hope or expectation of, immunity or leniency with respect to his own case. *See State v. Armento*, 256 N.W.2d at 229. We determine the trial court should have permitted defense counsel to inquire into the specific details of the plea agreement Abrams secured in exchange for testifying for the State. However, we find no reversible error as Runyan was not prejudiced by the trial court's improper limitation on cross-examination of Abrams. Accordingly, defendant's conviction is affirmed.

**AFFIRMED.**